# Evans *v.* Commercial Trust Co., Appellant.

*Banks and banking—Failure to pay check—Presentation for payment—Question for jury.*

In an action of trespass by a depositor against a bank, to recover damages for failure of the bank to pay a check, it was proper to submit the case to the jury, where the defendant bank denied that the check had ever been presented for payment and the evidence of the plaintiff was that the check was sent in due course through the clearing house and came back unpaid, although the plaintiff had but the one account and, at the time the check was given, had an ample balance to pay it.

*Evidence—Business methods—Presentation of check for payment.*

The commercial business of the world has long ago outgrown conditions upon which many, of what were once considered basic,

rules of evidence were founded. Many of the transactions of modern business could not be successfully established if direct and positive evidence of a witness, who personally knew the details of each step of each transaction, were required. On the question, as to whether or not a check was presented for payment, it was sufficient to take the case to the jury, for the plaintiff to show that the check was sent in due course through the clearing house.

Argued December 20, 1920. Appeal, No. 336, Oct. T., 1920, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1918, No. 412, on verdict for plaintiff in the case of Nelson P. Evans v. Commercial Trust Company. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Trespass to recover damages for dishonor of check. Before McCULLEN, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,000 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was refusal of defendant's motion for judgment non obstante veredicto.

*George Douglas Hay* and *B. Gordon Bromley,* and with them *Thomas DeWitt Cuyler,* for appellant.— There was not sufficient evidence to take the case to the jury. The jury could not find that the check had been presented and dishonored from evidence of the custom of banks in presenting checks through the clearing house: Fanning v. Equitable L. A. S., 264 Pa. 333; Douglas v. Mitchell, 35 Pa. 440; Mankin v. Parry, 70 Pa. Superior Ct. 558.

*Glenn C. Mead,* for appellee.—The presumptions of law are in favor of the ordinary and usual method of transacting business: Whitmore v. Dwelling House Ins.

Co., 148 Pa. 405; Reinisch v. Consolidated National
Bank, 45 Pa. Superior Ct. 236.

OPINION BY HEAD, J., April 18, 1921:

At the time of the occurrence that becomes the foundation of this action, and for many years before, the plaintiff, a resident of the City of Philadelphia, had a checking account in the Commercial Trust Company, the defendant. He had never had any banking account of any kind in any other institution of the city. He was a traveling salesman. In November, 1917, being then in the course of his business in the City of Chicago, he issued and delivered to the hotel at which he was stopping a check for $50 on the said trust company. At the time that check for $50 was issued, his bank balance with the defendant bank was approximately $380. If that check was duly presented to the defendant bank, there is no question but that it would have been the legal obligation of the defendant to pay the check. It was not paid. It was returned through the ordinary channels to the hotel in Chicago which had cashed it, and the situation thus presented was followed with circumstances decidedly unpleasant to the drawer of the check. Now although the record of the trial in the court below, as it comes here, indicates that twenty-one points or more for charge were presented by the defendant to the court below, and we have before us twenty-one assignments of error, it is apparent to all of us that if one question of fact was rightly submitted to the jury by the learned trial judge, and if the verdict of the jury was supported by evidence, there is but little else in the case to which we need give serious consideration.

The facts we are now about to recite are either admitted or so well supported by the evidence produced by the plaintiff, that the verdict of the jury requires us to regard them as established.

The check which the plaintiff issued was deposited by the hotel company in the Fort Dearborn National

Bank of Chicago. That bank had for its correspondent in the City of Philadelphia, the Girard National Bank. The Chicago bank, on November 7, 1917, in due course of business, mailed this check with 132 others, drawn upon various banks in the City of Philadelphia, to the Girard National Bank. It is trite to say that a great manufacturing and commercial city like the City of Philadelphia must, through its banks, be handling an immense volume of business of this character. We suppose it is not a matter of common knowledge just how much of the enormous commercial transactions of this country every day is disposed of through the medium of checks and drafts passed through the banks of the country. If we could do no more business than could be settled and disposed of every day by the use of cash, we would turn back the hands of the commercial clock for a half century at least. It is in evidence that the Girard National Bank, although only one of more than twenty banks making up what is called the Clearing House of the City of Philadelphia, customarily received something like four thousand to five thousand letters every day, enclosing checks from all over the United States, drawn upon banks in the City of Philadelphia. We have not before us any question that requires us to enter into a consideration of what is a matter of common knowledge in the commercial world, namely, what is a clearing house and what place does it occupy in the transaction of everyday banking business? The testimony offered by the defendant indicates that it was just as well aware of, and just as constantly utilizing the clearing house methods of disposing of its business as was the Girard National Bank. Now on the 7th of November, the latter named bank sent through the clearing house to some bank, the check of the plaintiff drawn upon the defendant bank, which it had received from the Fort Dearborn Bank in Chicago. It is agreed the checks which it received, drawn upon the defendant bank, should have been placed in an envelope marked No. 109,

which was the clearing house number of the defendant bank. The fact that the Girard National Bank did in point of fact send that check to the clearing house and that it came back to the Girard National Bank unpaid, seems to be undisputed because in taking up that unpaid check on the same day the Girard National Bank was compelled to pay over its counter $50 in cash to a runner of the bank which returned the check. When the check came back in the hands of a runner of some bank because it had been thrown out in the clearing house · returns, the apparent reason for the situation that then arose was indicated by pencil notations either on the face or on the back of the check, that the account of the drawer had been closed. We quote from the face of the check: "Acc't closed"; on the back of the check appeared "A/C clos." As the Girard National Bank had charged the clearing house, or the individual banks composing it, with the amount of the checks it had forwarded, it became necessary for it to make good its endorsement of the check which it had offered and which had in some way been rejected, by paying cash over its counter. This it did and the check was returned to the Chicago bank from which it had come. Now the significance of this testimony uncontradicted would surely be this: The Girard National Bank, in the ordinary course of business, had received in the morning a number of checks upon various banks in the City of Philadelphia, among them some upon the defendant bank. These checks were segregated and those upon each bank were placed in an envelope, endorsed with a number representing the bank upon which the checks were drawn, and sent to the clearing house. The sending bank was entitled to credit against the debits in its own books arising from the receipt of those checks, showing that they had been disposed of in the usual course of business when they were transmitted through the clearing house to the various banks upon which they were drawn. Naturally and necessarily it turned out that in the haste of business

many unimportant mistakes would be made. Checks drawn upon one bank might be enclosed in an envelope belonging to another bank, with a name more or less similar to the one upon which they were drawn. In such case the universal custom seemed to be that such checks would be returned to the sending bank by a runner, with the information they had been sent to the wrong bank, which fact was usually indicated by the brief initials W. B. Checks might be and were returned by the drawee bank to the collecting bank because of irregularities in the endorsement; because the payee bank was not satisfied with the signature; because the drawer had not sufficient funds. All of which reasons, or others like them, would be indicated by a brief notation on the check. The notation that accompanied the return of this check was decidedly unusual. It declared briefly but convincingly, not that a mistake had been made in sending it to the wrong bank, not that there was any irregularity in the endorsement of the check; nor any doubt as to the genuineness of the signature; nor that the funds of the drawer were merely insufficient to pay; the notation meant, if it meant anything, that the drawer was known to the bank to which the check was sent; that he had at some time had an account with that bank, but that such account had been closed. The evidence furnishes no theory upon which any bank in the city, to which that check might mistakenly have gone, could have returned it with the notation "Account closed." The inferences that might properly, if not necessarily, be drawn by a jury from the facts we have indicated, would support a verdict in favor of the plaintiff unless overthrown by satisfactory testimony produced by the defendant.

Now the defendant offered testimony to prove that it had received through the clearing house on the date in question the envelope marked No. 109, containing many checks drawn upon the Commercial Trust Company. Among them were five, and only five, of such checks in

· the sum of $50; that each and every one of those five checks had been paid by the defendant bank, and that although a number of checks had been sent back by runner to the Girard bank because mistakenly placed in the envelope, or for other good reasons, no check for $50 had been returned. The bank therefore contended that the check of the plaintiff, although confessedly a good check that should have been paid if presented, had never in fact been presented, and that the mistake or error or act of negligence, that resulted in the plaintiff's check being returned to Chicago as a worthless check, was not chargeable to the defendant bank or any of its servants or employees. What then was the status of the case with this conflicting evidence, corroborated as it is claimed on the one hand, or contradicted on the other, by some of the various exhibits offered in support of it? We can see no possible way in which the trial judge could have disposed of the controlling question in issue by regarding it as a matter of law. On the contrary he correctly viewed it as a question of fact, resting upon conflicting evidence, and therefore submitted it to the jury under instructions that we cannot regard as other than proper instructions.

It might be as well to say here what we have said before, that the commercial business of the world has long ago outgrown the conditions upon which many of what were once considered basic rules of evidence were founded. If it were now regarded as necessary to have the direct and positive evidence of some witness who of his own knowledge could trace the records accompanying the sale of a small quantity of merchandise from seller to buyer, or from shipper to consignee, it would be impossible for a railroad company to recover its freight, a bank to recover because of an advancement upon a foreign check, a department store to obtain the price of a book it had sold, nor could any such transactions be successfully carried on. We endeavored to point out the more modern conception of rules of evidence, owing to

304, (1921).]          Opinion of the Court.

the causes we have indicated, in Lowenstein v. Greenba▓▓, 65 Pa. Superior Ct. 19. We are of opinion the ev▓▓▓▓▓▓duced by the plaintiff, contradicted as it wa▓▓▓▓believed by the jury, furnishes a solid foundation for every finding, which as the case was submitted, undoubtedly establishes the fact the plaintiff's check had been presented in due course of business to the defendant bank, and by some mistake or error on the part of some one of its employees, had been rejected. This disposes of the main, and really the only seriously contested question in the case. Of the many assignments of error, it is sufficient to say we have examined all of them and with the controlling fact established by the verdict in favor of the plaintiff, we can find no substantial error in the course of the trial that would warrant us in reversing the judgment entered upon the verdict. The assignments of error must therefore be dismissed.

Judgment affirmed.