# William Zoller Co. *v.* Hartford Fire Insurance Co., Appellant.

*Insurance — Live stock insurance — Loss of hogs by carrier — Proofs of loss—Waiver—Evidence — Stockyard books — Best evidence—Identification of handwriting—Bill of lading—Acceptance of limited bill of lading.*

1. In an action on a policy of live stock insurance, there is sufficient evidence of waiver of proofs of loss, where it appears defendant had actual notice of the damage to the shipment of the animals insured within the time required for filing proofs of loss, and that thereafter defendant's authorized agent wrote a letter to plaintiff on the subject without therein denying liability on the ground that formal proofs of loss had not been furnished, but denying liability on other grounds.

2. If an insured, in good faith and within the time stipulated, does what he plainly intends as a compliance with the requirements of the policy as to proofs of loss, good faith equally requires that the company shall promptly notify him of their objections.

3. As the law always seeks the best evidence, so, when new and more certain methods of ascertainment and proof arise, the law, moving forward with and accommodating itself to the trade cus-

toms of the age it is serving, will make use of those means, which trade itself has developed, as an aid to certainty in recording transactions as they occur.

4. In an action against an insurance company to recover for loss of live stock, books of a stockyard association are admissible for the purpose of showing the condition of the animals when received at the yard, as such books are, under modern conditions, although contrary to the earlier rule, the best evidence.

5. If, in such case the entries were made by a clerk beyond the jurisdiction of the court, his handwriting may be identified by the traffic manager of the association.

6. Where live stock policies provide for "clear" bills of lading, and the insured accepts bills on which are stamped the words "accepted subject to delay on account of weather conditions," the insurance company cannot defend against a loss by setting up such variance between the policy and the bills of lading, where there is no proof of delay in shipment from weather conditions or other causes.

7. If the injury was due to the negligence of the carrier, and the effect of the stipulation was to waive the right of recovery for negligence, the limitation of its liability was, under the law of Pennsylvania, not enforceable by the carrier against the shipper, and, if it did not cover the loss from the carrier's negligence, the insurance company was not injured by it.

*Practice, C. P. — Affidavit of defense — Trial — Questions not raised by affidavit of defense—Act of May 14, 1915, P. L. 483.*

8. Under the Act of May 14, 1915, P. L. 483, a defense not set forth in the affidavit of defense, cannot be raised at the trial.

*Appeals—Charge and points—Filing of record—Assignments of error.*

9. Where an appellant has not asked that the charge and the points with their answers be written out and filed of record, they are not available for assignments of error.

Argued October 18, 1921.   Appeal, No. 183, Oct. T., 1921, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1919, No. 981, on verdict for plaintiff, in case of William Zoller Co. v. Hartford Fire Insurance Co.   Before FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ.   Affirmed.

Assumpsit on policies of live stock insurance.   Before FORD, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $2,290.62.   Defendant appealed.

*Errors assigned* were various rulings and instructions sufficiently appearing by the opinion of the Supreme Court, quoting record.

*John M. Haverty,* for appellant.—The stockyard books were inadmissible: Liverpool, etc., Ins. Co. v. Kearney, 180 U. S. 132.

There was not sufficient evidence of a waiver: Kearney v. Ins. Co., 67 Pa. Superior Ct. 179; Edelson v. Ins. Co., 59 Pa. Superior Ct. 379; Dunn v. Ins. Co., 34 Pa. Superior Ct. 245.

If the insured destroys the insurer's right of subrogation against the party causing the loss, he cannot recover against the insurance company: Roos v. R. R., 199 Pa. 378.

*Frank Thomson,* of *Thomson & Bradshaw,* for appellee, was not heard.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1922:

This is an action on four policies of insurance, issued by defendant to plaintiff, covering hogs, the property of the latter, and shipped to him at Pittsburgh from St. Louis.   On arrival of the hogs at destination, it was ascertained a number of them were dead and others crippled.   Claim was made by the insured to the insurance company for the loss suffered, liability was denied, suit was brought and recovery had for the full amount claimed; from the judgment entered on the verdict comes this appeal.

Appellant presents these propositions challenging plaintiff's right to recover:  (1) No proofs of loss were

furnished as required by the policies, and there was no sufficient evidence to show a waiver of the requirement that they should be furnished. (2) It was error to admit books of the Pittsburgh Union Stockyards showing the condition of the hogs when received there for the purpose of establishing plaintiff's loss. (3) The policies providing for "clear" bills of lading, and plaintiff having permitted extra conditions to be added to them, this rendered the policies void.

Whilst it is true no formal proofs of loss were furnished, and the policies did provide for their submission to the company within twenty days after loss, yet it is undisputed that, a few days after the arrival of the shipments at Pittsburgh, invoices were sent by plaintiff to defendant showing the number of the dead and crippled hogs, together with their average weight, and a statement of the amount of loss claimed. In addition to this, about thirty days after the loss was ascertained, the superintendent of claims of defendant called on plaintiff, and requested copies of the bills of lading, which were furnished; later, the same official wrote a letter to the insured, referring to his visit, in which he said "at which time you handed me certain papers in support of your bills against this company." In this communication, no mention was made of the failure to furnish proofs of loss, and liability was denied, not on that ground, but because of the special stipulation as to delays in transit, written by the carrier into the bills of lading.

There can be no question of the full knowledge by the insurance company of the loss well within the twenty days, that it investigated and made no denial the loss had been sustained; nor did defendant question the amount claimed. It also appeared by the letter referred to that, within the twenty days, plaintiff had endorsed, and turned over to defendant, checks drawn to plaintiff's order by a bank in Indianapolis covering the amount received from the sale of dead and crippled

hogs, removed from cars at that point. These checks had been held by defendant from February 2d to the date of the letter, May 8th; and, when the insurance company repudiated its liability, they were returned to plaintiff, in order that it might realize on them. Appellant's conduct, after ascertaining there had been a loss, and the position assumed in the letter referred to, constitute a waiver of the requirement of the policies that formal proofs of loss should be furnished within a stipulated time. "If the insured, in good faith, and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy, good faith equally requires that the company shall promptly notify him of their objections, so as to give him the opportunity to obviate them; and mere silence may so mislead him to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel": Gould v. Dwelling-House Ins. Co., 134 Pa. 570, 588; Weisberger v. Western Reserve Ins. Co., 250 Pa. 155.

Was it error to admit in evidence, on plaintiff's offer, the books of the Pittsburgh Union Stockyards, showing the condition of the hogs when received there? It was testified, by the traffic manager and yardmaster of the stockyards, that a record is kept of the car number of every car from which stock is unloaded, the number of animals discharged from it, whether dead or alive, and whether anything appears to be wrong with them. Testimony was received, from clerks who made the entries, and from the traffic manager, after identifying the handwriting of a clerk, who was beyond the jurisdiction of the court, as to the number of hogs shown by the books to be dead in the cars on their arrival and the number found crippled, for the purpose of establishing plaintiff's loss. It is argued that this evidence was incompetent. The general rule is that a person's books of account cannot be used as evidence upon issues between third persons; that entries in such books as to such

third persons are res inter alios acta, and cannot be used against persons not parties to them (53 L. R. A. 513, note), but, stating the exceptions to this rule and summing up the cases, it is said, "Books of carriers, such as railroad companies and express companies, are admissible in evidence, on issues between third persons, on the principle that entries made in the course of business, which it is the duty of the carrier to make, are competent evidence": 53 L. R. A. 530 (note), and cases cited.

While the earlier rule denied the admissibility of books of account, in issues between third persons, the modern tendency is to widen the door to their admission. This grows out of the magnitude and complication of modern business. No longer does the owner of hogs personally drive them to market; whether they have arrived at their destination in most instances cannot be known to him, he can only show they did or did not, by some such agency of transportation as that summoned here, a railroad stockyard, into which go livestock shipments consigned to great centers of population; their books are not alone the only evidence which is available to show delivery and condition when received, but in these days they are usually the best available evidence of such facts. As the law always seeks the best evidence, so, when new and more certain methods of ascertainment and proof arise, the law, moving forward with and accommodating itself to the trade customs of the age it is serving, will make use of those means, which trade itself has developed, as an aid to certainty in recording transactions as they occur.

Pennsylvania has recognized the need of easier methods of proof than the common law afforded, as to matters in which carriers are concerned, and, by the Act of May 25, 1897, P. L. 82, 1 Stewart's Purdon 619, has provided that, in suits brought in the courts of the Commonwealth, in which accounts kept by common carriers, and certain other public corporations, are involved, on

the trial of an issue between other parties, in the result of which the corporation has no direct or pecuniary interest, a copy of the books of account of the corporation, under the oath of an officer or employee in charge of them, filed within ten days of the date of trial, shall be prima facie evidence, and the books themselves need not be produced, except upon allegation of errors or omissions. This is a legislative recognition of the propriety of proof of the kind received in this case. The books of the stockyard were properly admitted, and proof of some of the entries therein, made by a clerk beyond the jurisdiction, by proof of his handwriting, was in accord with authority: Alter v. Berghaus, 8 Watts 77.

We now come to the last question which the record raises: The policies providing for "clear" bills of lading, and plaintiff having permitted extra conditions to be added to them, did this render the policies void? By a "clear" bill of lading, as we understand it, is meant, the uniform livestock shipment form thereof without superadded conditions. Across the face of the bills of lading, covering the shipments in this case, was stamped, "Accepted subject to delay on account of extreme weather conditions," or words of equivalent meaning. There is no proof that defendant had notice of this condition, inserted in the contract of carriage, before it issued its policies, but it is most significant that, in its policies it has the car numbers, as given in these documents, as well as the lines of railroad over which the shipments were to be made as appearing therein; however this may be, and whether the defendant had notice of the added condition or not, there was no proof of any delay in shipment from weather conditions or other causes. It might be sufficient to point out, to answer the contention now made, that no such defense as that set up, covering additional conditions to the bills of lading, appears in the affidavit of defense, and this defense was therefore not available to defendant. "Neither party shall be permitted at the trial to make any defense which is not

set forth in the affidavit of defense, or plaintiff's reply, as the case may be, except as provided in sections seven and thirteen": Act May 14, 1915, P. L. 483, 6 Stewart's Purdon 7137. Furthermore, the assignments of error, which raise the question we are now considering, are to a part of the charge and the answer to a point submitted by defendant; as appellant did not ask that the charge and the points with their answers should be written out and filed of record, they are not available for assignments of error: Ward v. Babbitt, 270 Pa. 370. Under the established public policy in Pennsylvania, if the injury and death of the hogs were due to the negligence of the carrier, and the effect of the additional stipulation, put upon the bills of lading, was to waive the right of recovery for negligence, the limitation of its liability was not enforceable by the carrier against the shipper, and, if it did not cover loss from the carrier's negligence, the insurance company was not injured by it, and has no ground of complaint. What would have been the status of the parties now before us, had it been shown the loss was occasioned by delays, on account of extreme weather conditions, or from other causes, we are not called upon to determine. On the facts appearing, there is no merit in appellant's position that it is relieved from liability because of the clause stamped on the bills of lading.

We have considered all questions which appellant has raised; on none of them do we agree with its contentions. The assignments of error are overruled and the judgment is affirmed.