# Commonwealth *v.* Grotefend and Haun, Appellants.

*Criminal law—Intoxicating liquors—Conspiracy to manufacture —Manufacture and sale—Record—Persons in charge—Evidence— Admissibility.*

In the trial of an indictment for the sale, manufacture, and conspiracy to manufacture intoxicating liquors, it is proper to offer in evidence railroad receipts showing the shipment of the illegal beer, even when the persons who actually made the entries are not called as witnesses.

Where the person who actually made the entries cannot be produced at the trial, and where from the very nature of the business it would be impossible to produce him, it is proper to permit the party in charge of the office, under whose supervision the records were made, to prove the same.

The receipt of these documents so proven does not infringe upon the constitutional right of the accused to meet the witnesses face to face, as guaranteed by article I, section 9, of the Constitution of Pennsylvania.

It was also proper to admit in evidence the receipt of the record of the United States Court showing that certain beer, admittedly taken from the defendant's brewery, had been seized and ordered destroyed by the federal judge. This evidence was received, in support of the indictment charging conspiracy, to prove motive, to show guilty knowledge and rebut any inference of mistake. The defense advanced having been that there was a mistake in taking the beer out of the wrong vat, the Commonwealth could be permitted to prove that the defendants knew that they were manufacturing illegal beer, and that a car of beer containing an excess of alcohol had been seized by the government and destroyed without their raising a hand to prevent such destruction.

Syllabus—Assignment of Error.      [85 Pa. Superior Ct.

*Practice, Q. S.—Trials—Jurors—Newspaper articles.*

The granting of a new trial because of articles appearing in newspapers, which may have been read by the jurors during the trial, is largely a question for the discretion of the trial judge.

Where, as stated by the court in refusing a new trial, it appears that the articles did not refer to any previous misconduct of the defendants, or discredit any material witness or misstate the evidence, and that it was not such that it could have affected the verdict, the Superior Court will not reverse.

In the trial of an indictment for conspiracy to manufacture, sell, etc., intoxicating liquors, a statement by a district attorney that persons who band themselves together to violate the law by the sale of illegal beer are "faithless to their country and to their flag," when coupled with the qualification that the question was whether these men did what they were charged with, or whether they conducted an honest business, is not sufficient to justify the withdrawal of a juror.

Argued October 7, 1924.   Appeals, Nos. 26 and 27, April T., 1925, by defendants, from judgment and sentence of Q. S. Lawrence Co., March Sessions, 1923, No. 51, in the case of Commonwealth v. Henry Grotefend and E. O. Haun.  Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Affirmed.

Indictment for manufacture and sale of intoxicating liquor and conspiracy to manufacture the same.   Before EMERY, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed.   Defendants appealed.

*Errors assigned* were various rulings on evidence, as recited in the opinion of the Superior Court, and refusal to withdraw a juror because of remarks of the district attorney.

*Clyde Gibson,* and with him *A. Martin Graham,* for appellants.

*R. L. Hildebrand,* District Attorney, and with him *Aiken & Braham,* for appellee.

OPINION BY TREXLER, J., February 27, 1925:

The defendants were indicted on six counts charging, 1st.—Manufacturing intoxicating liquor, 2d.—Selling, 3d.—Furnishing, 4th.—Transporting, 5th.—Possessing, 6th.—Conspiracy to manufacture, sell and offer for sale, furnish, transport and possessing intoxicating liquors for beverage purposes. The Standard Brewing Company was a corporation having its place of business at New Castle. One of the defendants, Haun, was its secretary and treasurer, the other Grotefend was brewmaster and superintendent. The Commonwealth showed that there was beer containing an illegal excess of alcohol manufactured at the defendant's place. It was also shown that a number of cases of such beer were taken from the brewery, upon a conveyor, and put in a car to be shipped by rail. The defense of the defendants to this state of facts was that there was a mistake made in that the beer was taken out of the wrong vat.

At the trial there were received in evidence certain exhibits which were part of the records of the freight office of the Pennsylvania railroad system at New Castle. They consisted of way-bills, conductors' reports, conductors' yard reports, memorandum of loaded cars, and shipping orders. The objection urged is that the receiving of these documents infringed upon the constitutional rights of the accused to meet the witnesses face to face, Pa. Const., article I, section 9. The officials in charge of the railroad office were called to testify that the records produced were the records of their respective offices and kept under their supervision. The conductors' cards were identified by the very conductors who made them. The business of these railroads involves countless items and to produce at the trial of a case every person who made an entry would be practically impossible especially when the transaction extends over a long period of time.

Regular entries in the course of business have long been recognized by necessity as exceptions to the hearsay rule, Wigmore 1426-1540. It has been held in a number of cases, as stated above, that the presenting of the party in charge of the office under whose supervision the records were made is competent to prove the records where the party who actually made the entries cannot be produced at the trial and of course in the case of a railroad company, from the very nature of the business it would be impossible usually to have every paper identified by the person who made it. See Ehmling v. D. L. Ward Co., 279 Pa. 527, citing 3 Wigmore on Evidence, 2 ed. 278; Com. v. Clymer, 30 Pa. Superior Ct. 61, 217 Pa. 302; Chaffee v. United States, 85 U. S. 516, 541; Evans v. Commercial Trust Co., 76 Pa. Superior Ct. 304; Lowenstein v. Greenbaum, 65 Pa. Superior Ct. 19; Burke Electric Co. v. Pennsylvania L. & P. Co., 61 Pa. Superior Ct. 374. We quote from the words of ORLADY, now our President Judge, in the last-named case: "It is well known that with the volume of business transacted by common carriers it is practically impossible, after the lapse of years to produce all the books, clerks, salesmen, teamsters, and the like, who have contributed by their service in a special transaction. The rule is fairly stated in 2 Wigmore on Evidence, section 1530. In such a case it would be sufficient if the books verified on the stand by a superior officer who knew them to be the books of regular entries kept in the establishment." In Billingsley v. U. S., 274 Fed. 86, under an indictment for transporting whiskey, the prosecution introduced the books of account of the alleged seller of whiskey. The books were proven by the man in charge who had made some entries, but not all. He had no personal knowledge of the transactions. It was there stated: "These books were properly received in evidence. They were kept by O. S. & Co. in the regular course of business by a person employed for that purpose. It was wholly unimportant whether the witness, Levy, made any or all of the entries

therein or not, and equally immaterial whether or not he had any recollection in reference to the particular sales." See Foster v. U. S., 178 Fed. 165; Bettman v. U. S., 224 Fed. 819; State v. Virgens, 151 N. W. 190. In the last case, the records of a large merchandizing house were admitted without verification by the particular clerk who made the entry. This was a murder case where the purchase of the pistol with which the crime was committed was thus proven. In a prosecution for forging an express order, the express agent may testify as to the entries made by his assistant where they were kept under his direction and instruction, Cheesebourge v. State, 157 S. W. 761. See Griswold v. State, 212 P. 1018; State v. Wolkow, 205 P. 639; Herberg v. State, 222 S. W. 559.

The next objection is directed to the receipt of the record of the U. S. court showing that certain beer admittedly taken from defendant's brewery was seized and ordered destroyed by the federal judge. This evidence was received in support of the indictment charging conspiracy to prove motive, to show guilty knowledge and to rebut any inference of mistake. It may be remembered that the defense of the defendants alluded to above that there was a mistake in taking the beer out of the wrong vat. The Commonwealth sought to prove that these defendants knew that they were manufacturing illegal beer, in fact that they had admitted it and that a car of beer containing an excess of alcohol had been seized by the government and destroyed without their raising a hand to prevent it. There was testimony that they had been notified that the car of beer had been seized and that it would be destroyed. The car, the contents of which were seized, was New York Central 155983. This car was identified by the freight agent in charge of the office at New Castle, was traced by the way-bill showing its shipment from New Castle to Pittsburgh, was identified by the conductor's car, or loaded car memorandum and through other records of the railroad to which we

need not here refer. The libel filed by the prohibition agent refers to car number 155983. The order of court does the same. A witness testified that he had stated to Mr. Lamoree and Mr. Haun, officers of the brewing company, that a carload of beer which had been shipped to Herman Mihm, consignee, according to the above records, had been found to contain illegal beer. There was sufficient to show that these parties were aware of the proceedings and that they stood by and did not demur to its destruction, and we think that in a proceeding in rem such as this, the finding of the federal court, that the beer exceeded the alcohol content allowed by law, was properly placed in evidence. Whether it could have been admitted without proof that the defendants had knowledge of the proceeding is another matter. The conclusion of the learned trial judge, we think, was justified, "for defendants to allow a carload of beer to be seized and destroyed as illegal beer and not to appear and set up any defense, is evidence against them in the manner of an admission."

After the selection of the jury in this case the district attorney made a request for the jury to be kept together until the final verdict of the case was reached. This was vigorously opposed by the defendant's counsel. It appeared that certain newspapers were allowed to be read by the jury and the defendants argue that a new trial should be granted by reason of the fact that some of the articles in the newspapers commented upon the case and may have had the effect of influencing the jury. The articles are to the effect that the jury has been carefully guarded by tipstaves who have charge of it, that the case was on trial for the third time and that by the introduction of new evidence the Commonwealth scored a strong point. Our courts have decided that the granting of a new trial upon the matter contained in the newspapers is a matter of judicial discretion. There is no doubt that in a number of cases where jurors are allowed to separate, they will go home and read newspapers and in

them there are frequent allusions to trials in progress, but it is also recognized that jurors are sworn to try the case according to evidence and that it is pretty well understood that comments by newspapers, unless of an inflammatory or argumentative nature, are not to be taken seriously. There was nothing in this case which would prejudice or influence the verdict of the jurors. The court was the proper party to decide as to whether a new trial was necessary. See Commonwealth v. Valverdi, 32 Pa. Superior Ct. 246; Com. v. Valverdi, 218 Pa. 10. The lower court stated: "We have carefully considered the publications in question, and are of the opinion that, as the articles did not refer to any previous misconduct of the defendants, or discredit any material witness, or misstate the evidence, it is by no means clear that they could have affected the verdict." See Stern v. Johnston, 38 Pa. Superior Ct. 1; Com. v. Chauncey, 2 Ashmead 98; McCue v. Com., 103 Va. 870, 49 S. E. 631. We find no abuse of discretion.

The defendants contend that there was no evidence to sustain a verdict of the court charging selling or offering for sale. The verdict of the jury as a general verdict of guilty on all six counts of the indictment and without particular mention of any count. The sentence of the court was that each defendant pay a fine of $1,500 and undergo an imprisonment of ten months. The judgment can stand as an appropriate sentence on any count. See Com. v. Eilenberger, 80 Pa. Superior Ct. 23, and cases there cited.

The last assignment that we have presented to us is that the district attorney in his remarks to the jury exceeded the bounds of propriety and injected matters into the jury box which justice requires must be cured by granting a new trial. We do not share that view. The remarks of the prosecuting officer must be considered in connection with the testimony produced. Assuming that the testimony produced by the Commonwealth was true, the remarks seemed to be justified. Any people who

band themselves together to violate the law by the sale of illegal beer, may be characterized as "faithless to their country and to their flag."  It must be remembered that these allusions were coupled with the qualification that the question was whether these men did what they were charged or whether they conducted an honest business. We think the court was right in declining to withdraw a juryman on account of these statements.

As to the appeal of Henry Grotefend, all the assignments of error are overruled, the judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.

As to the appeal of E. O. Haun, all the assignments of error are overruled, the judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.