Commonwealth *v.* Long, Appellant.

358

Argued April 8, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*J. Campbell Brandon,* of *Brandon, Brandon & Ross,* for appellant.

*Edgar H. Negley,* District Attorney, for appellee.

OPINION BY RHODES, J., July 18, 1935:

The defendant, James N. Long, was tried on two separate indictments, the one charging him with the larceny of a $1,000 United States Treasury certificate, and the other with the larceny of three $500 United States Fourth Liberty Loan coupon bonds. He was convicted of the latter charge only, and appeals to this court.

The testimony shows that the defendant was the cashier of the First National Bank of Bruin, Butler County, Pennsylvania, from February 1, 1926, until March 4, 1933. During this period the business of the bank was conducted by the defendant and one assistant, Miss Steckman. The defendant acted as conservator from March 23, 1933, until September 25, 1933, when John E. Cobler was appointed receiver. He continued in Cobler's employ until October 15, 1933, when he left the bank.

Mrs. Laura Fletcher, a widow seventy-eight years of age, had a safe deposit box in the vault of the bank. This box was in one of the higher tiers; and, as she could not reach it, the defendant, while employed in the bank, often got it out for her.

In the early part of April, 1934, Mrs. Fletcher, in going over the contents of her box, noted that a bond was missing. She then made a memorandum of the numbers of the remaining bonds, among which were three $500 United States Liberty Loan bonds. When she next examined the contents of her box on May 2, 1934, these three bonds were missing.

On April 20, 1934, the defendant sold one of the missing $500 bonds to brokers in Butler, Pa., and received $516 therefor; and on the same day he sold two $500 United States Liberty Loan bonds to the Mellon National Bank, of Pittsburgh, Pa., for which he received a credit of $1,038. The numbers of these two bonds as shown by the bank's records were the same as those of Mrs. Fletcher's. Mrs. Fletcher further identified one of these as her bond, as several coupons had been inadvertently cut from the bond by her before due and pasted back thereon.

It appeared that the safe deposit boxes of the bank could be opened only by the use of two keys: a master key which always hung inside the vault, and a key which fitted each particular box, and which was given to the customer. The defendant had available a list of key numbers; he was familiar with the type of key used; and he knew how to obtain duplicates if he so desired.

The defendant lived in an apartment directly above the bank, and it was possible to go into the banking quarters from his apartment at any time. He himself rented a safe deposit box in the vault for a number of years and retained the same until July, 1934. He testified that the last time he went into the vault to inspect his box was on January 23, 1934. Mr. Cobler, the re-

ceiver, and Miss Steckman, his assistant, contradicted him in this, stating that he was in the vault alone, while they were working in the directors' room, at least four or five times subsequent to that date.

The defendant admitted selling two $500 Liberty bonds to the Mellon National Bank in Pittsburgh on April 20, 1934, and a $500 Liberty bond to brokers in Butler, Pa., on the same date. He stated that the three bonds in question were his; that he kept them, along with other bonds, in a metal box under a day bed in his apartment above the bank; that he could not recall from whom he purchased the bonds several years before; that he had removed these bonds from his safe deposit box in the bank about October 15, 1933; that this metal box kept in his apartment was ransacked about June 28, 1934, and the list of his bonds containing their serial numbers, as well as two $500 Liberty bonds, was stolen.

Appellant's first and second assignments of error relate to the refusal of a new trial and to sentence on the verdict. The request for new trial was based on certain questions asked by the district attorney; appellant claiming that the questions as asked were prejudicial to him. The district attorney did, in the course of the trial, ask questions which were admittedly improper, such as those tending to show prior and other offenses by defendant and other losses by depositors than those charged. These questions were not specifically assigned as error. We think that the defendant was not prejudiced thereby, as the trial court promptly sustained all objections thereto and instructed the jury to disregard such testimony as it was incompetent. Moreover, the learned trial judge gave the defendant ample opportunity to protect himself, if he felt that he had been prejudiced by the conduct of the district attorney.

The evidence, although largely circumstantial, was clearly sufficient to sustain the verdict.

It is appellant's contention (third assignment of error) that the bond purchase records of the Mellon National Bank, showing the serial numbers of the two bonds which defendant sold there on April 20, 1934, were improperly admitted, because the serial numbers of the bonds were placed on the bank's duplicate receipt and written in the bank's record, showing all bonds purchased, by Miss Crawford, an employee of the bank, who never saw the bonds, and because the person who did copy the numbers from the bonds was not called to testify. The basis of appellant's contention is that these numbers on the bank's duplicate receipt were hearsay, since they were not made by an actual observer. These were the only two Liberty bonds received by the Mellon National Bank that day. A memorandum receipt for these two bonds was given the defendant, the bank keeping a carbon copy thereof. This receipt was in the handwriting of Mr. Desort, a clerk in this bank. The serial numbers appear on the carbon copy of this receipt, and not on the original. Neither Mr. Desort, who wrote out the receipt, nor Miss Crawford, who made the notation of the serial numbers, ever saw the bonds. They testified that they took these numbers from a counter check; that a clerk in the security cage always put the numbers of any bonds brought there on such a check, as a matter of regular business routine. The testimony of Miss Crawford, the witness who had charge of these bond purchase records of the bank, shows that these entries were made by her from the counter check on the day following the transaction, in the regular course of the bank's business. These records were sufficiently identified; and the circumstances under which they were made are a sufficient guarantee of their veracity. They were made in the regular course of business by the bank's employees; neither the bank nor its employees being a party to this case. We think that they come within

that well-recognized exception to the hearsay rule, which does not require the original observer to be called in case of records made and recopied by a number of clerks in the regular course of business: 3 Wigmore on Evidence, 2d Ed. page 278; Commonwealth v. Grotefend & Haun, 85 Pa. Superior Ct. 7, 10; Ehmling v. D. L. Ward Co., 279 Pa. 527, 531, 124 A. 181; Roberts et al. v. Claremont Power Co., 78 N. H. 491, 102 A. 537.

Nor was it necessary to show the death or absence from the jurisdiction of the original entrant in order to excuse his production at the trial of this case. "Modern conditions of doing business have introduced a new element of unavailability, that of practical inconvenience": Lowenstein v. Greenbaum, 65 Pa. Superior Ct. 19, 24. See also Zoller Co. v. Hartford Fire Ins. Co., 272 Pa. 386, 391, 116 A. 359; E. I. Dupont de Nemours & Co. v. Tomlinson, 296 F. 634.

The fifth, sixth, seventh and eighth assignments of error relate to the lower court's charge. Appellant claims that the trial judge made certain misstatements of fact in reviewing the evidence, especially in stating that the Mellon National Bank records show the numbers of the bonds sold by the defendant; also in stating defendant admitted that the numbers and denominations of the bonds he sold were the same as those claimed to be owned by Mrs. Fletcher. These statements were substantially correct. The learned trial judge carefully, and at some length, charged the jury that his recollection of the evidence was not controlling, but that they alone were to determine, from their own recollection, what the evidence was. We see no error in the trial judge's stating that there was no evidence connecting Mr. Cobler or Miss Steckman with the bonds in question. An examination of the entire charge of the court discloses no reversible error, but shows that it was a fair presentation of the facts and a correct statement of the law.

There is no merit in the ninth assignment of error. After the jury had been out some time, they returned, and, when asked whether or not they had agreed upon a verdict, the foreman stated: "We can't come to a verdict, we stand eleven to one for conviction." The court then instructed them, in substance, that it was their function to agree, "to argue out the matters, and determine where the truth lies"; that they "retire to the jury room and make an effort to work it out." This was a proper instruction. "The court did not attempt to usurp the functions of the jury nor to compel them to agree against their consciences or convictions": Girard Trust Co., Executor, v. Page, 282 Pa. 174, 179, 127 A. 458.

All of the assignments of error are overruled.

The judgment of the lower court is affirmed, and it is ordered that the defendant, James N. Long, appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.