Pinkerton's National Detective Agency *v.* Rosedale Silk Company, Appellant.

Argued March 2, 1936.

Be-
fore KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER,
JAMES and RHODES, JJ.

*Maurice S. Cantor,* with him *Andrew Hourigan,* for
appellant.

*Clarence J. Wing,* with him *Thomas Byron Miller,*
for appellee.

OPINION BY KELLER, P. J., April 16, 1936:

Pinkerton's National Detective Agency brought this
action in assumpsit against Rosedale Silk Company, a
Pennsylvania corporation, for services performed at the
defendant's plant, No. 241 West Eighth Street, Wyo-
ming, Pennsylvania, and expenses incurred ·in connec-
tion therewith, between August 3, 1931 and September
26, 1931. The total amount of the bill was $602.04.
Credits were allowed of $336.51. The balance sued for
was $265.53, with interest.

The defense set up was that defendant had leased its
plant in October 1930 to Pearl Silk Company; that
plaintiff's contract of employment had been with that
company and the services rendered under it had been
performed for that company and not the defendant.
There was no dispute as to the services rendered, their
value or the amount due plaintiff, or the terms of em-

ployment, except as to the party with whom plaintiff contracted.

The undisputed evidence was that the Rosedale Silk Company owned the building and machinery in the plant at 241 West Eighth Street, Wyoming. No other name appeared on the building. The business was listed in the telephone book as Rosedale Silk Company. Defendant's counsel formally admitted on the trial, (p. 44a), that 241 West Eighth Street was the principal office of the defendant company. Workmen's compensation insurance was carried in the name of Rosedale Silk Company from October 1930 to March 1932 covering the operations carried on at that plant. No lease was produced on the trial from Rosedale Silk Company to Pearl Silk Company or anyone else.

It also appeared in evidence, without contradiction, that all the stock of Pearl Silk Company was owned by Isaac M. Pearlman and his wife Yedda Pearlman; that it was a New Jersey corporation with plants at Paterson, N. J. and Norwalk, Conn., of which Isaac M. Pearlman was president; that a firm in New York City named Ginsberg Bros. had owned all the capital stock of Rosedale Silk Company, that Ginsberg Bros. wanted I. M. Pearlman to take over this stock, and allowed him to operate the plant on trial from October 1930 to January 1931, when he bought all the capital stock, which was issued and delivered to him and then assigned by him to Ginsberg Bros. as collateral security for the unpaid purchase money, which was to be paid in monthly instalments over a period of time. Pearlman thus became the owner of all the stock of Rosedale Silk Company and was elected its president. As such he signed the affidavit of defense in this action. He had the telephone listed and the workmen's compensation insurance taken out in the name of Rosedale Silk Company, and neither was changed until March 1932. He gave Max Goldberg, superintendent of the plant, general authority (57a) to

do what he thought proper by way of employing the plaintiff company and having it place one of its operatives, as an employee, in the plant in an endeavor to find the person or persons who were abstracting goods from the plant.

Johnson, superintendent of plaintiff's Scranton agency, who acted on behalf of the plaintiff in making the contract of employment, testified that pursuant to a telephone call from one Kaplan, an official of the Belmont Silk Company at Forty Fort, Pa. for which they had done similar work, he met Max Goldberg and William Pearlman, son of I. M. Pearlman, at the Hotel Sterling, Wilkes-Barre; that Kaplan introduced Goldberg as the superintendent of the Rosedale Silk Company at Wyoming, and Pearlman as the son of I. M. Pearlman, the president of that company; that they talked over the conditions existing at the plant; that Goldberg informed him that he was superintendent of the Rosedale Silk Company and Pearlman said he was looking after his father's business. They arranged for the placing of an operative in the mill, the rate, expenses, wages, credits and other terms, and the next day (July 30, 1931) Johnson sent a letter addressed to "Rosedale Silk Co., 111[1] W. 8th St., Wyoming, Pa," the contents of which were as follows:

"ATTENTION—Mr. W. Pearlman.

"We beg to confirm conversation of yesterday between your Messrs. Goldberg and Pearlman and the writer.

"Also to advise our charges in connection with this work will be ten (10) dollars per day, six (6) days per week for the operative detailed, plus two (2) dollars per day, seven (7) days per week subsistence for the operative.

"Wages paid to the operative by your company, during the course of the operation, up to and including

---

[1] By an error the telephone number (111) was used in the address instead of the street number (241), but the letter was duly delivered at 241 W. 8th St.

twenty-five (25) dollars per week, excepting overtime and bonuses, are to be credited to you. The operative to retain all wages over twenty-five (25) dollars per week and any and all overtime and bonuses.

"It is especially understood that you will fully protect the operative from this agency entering your employ, and ourselves, under the Workmen's Compensation Law in effect in the State of Pennsylvania, or provide such insurance as will afford us full protection.

"Bills payable upon presentation.

"If the above is not as per your understanding, kindly communicate with the undersigned.

"Thanking you for the business entrusted to us, we remain" etc.

This letter was duly received and opened by Max Goldberg, superintendent, and no objection was made as to the name of the company for whom plaintiff was to work. An operative, named Peppe, was accordingly placed in the plant as an employee, who made daily reports, which were sent daily, addressed to Max Goldberg, Superintendent, Rosedale Silk Company, 241 West 8th Street, West Wyoming, Pa. All of these were admittedly received by Goldberg and no objection was ever made by him, or any one else, that they were wrongly addressed and should have been sent to Pearl Silk Company. The employment, which was for no definite period, ended on September 26, 1931. Bi-weekly checks of Pearl Silk Company were given the operative, which were credited on the account, and on January 18, 1932, nearly four months after the employment ended, in response to frequent requests for payment, I. M. Pearlman sent plaintiff a check of Pearl Silk Company for $200. Pearl Silk Company failed in March 1932, and immediately thereafter, another company, Wyoming Weaving Company, owned by I. M. Pearlman and his wife, Yedda Pearlman, of which the latter is president, is said to have taken over the operating end of

the business. The monthly payments on the stock bought by I. M. Pearlman from Ginsberg Bros. have been made by checks of Pearl Silk Company and Wyoming Weaving Company.

Defendant called as witnesses Max Goldberg and I. M. Pearlman. The former said he had been superintendent of Pearl Silk Company and was now superintendent of Wyoming Weaving Company but denied being superintendent of the Rosedale Silk Company or that he had ever told Johnson that he was superintendent of that company. He made no satisfactory explanation of his failure to notify the plaintiff of the fact that their letter and reports were addressed and sent to the wrong company, or of his action in opening mail addressed to the Rosedale Silk Company. I. M. Pearlman's testimony was most unsatisfactory. He denied that Rosedale Silk Company had ever authorized the employment of plaintiff's operative, but it was apparent throughout his testimony that he considered both companies (Pearl Silk Company and Rosedale Silk Company) his individual property and conducted himself accordingly. His explanation of his use of the name, Rosedale Silk Company, in securing the installation of the telephone and in taking out workmen's compensation insurance and keeping them in that name until March 1932, to wit, that it was done to secure credit—that is, that the public might think it was dealing with Rosedale Silk Company—was most damaging. The Act of April 26, 1929, P. L. 829, p. 830, (amending section 305 of the Workmen's Compensation Act of 1915), makes it a misdemeanor for any employer to fail to comply with the provisions of the Workmen's Compensation Law and insure its employees in the State Workmen's Insurance Fund or some authorized insurance company or association, unless specially exempted therefrom. This is particularly relevant here, because plaintiff's letter of July 30, 1931 called special

attention to the fact that the silk company would be required to protect the operative which plaintiff sent under the Workmen's Compensation Law or provide such insurance as would afford plaintiff full protection. The Pearl Silk Company carried no workmen's compensation insurance covering the mill at Wyoming during that period. If it was operating the mill it violated the law every day of its operation; on the other hand the Rosedale Silk Company carried workmen's compensation insurance for all the employees in the mill, including Peppe. Neither Goldberg nor Pearlman denied that Rosedale Silk Company had made shipments of goods from 241 West Eighth Street, Wyoming, by Railway Express Agency to Pearl Silk Co., Norwalk, Conn., and Old Forge Silk Co., Old Forge, Pa., between April 23, 1931 and September 16, 1931, as testified to by the District Agent of the Express Company.

We are satisfied that there was ample evidence to justify a finding by the jury that the contract of employment with plaintiff was made by Goldberg, acting for the Rosedale Silk Company and with the full authority of its president and sole owner; that the circumstances shown to have existed at this plant supplemented the declaration of Goldberg to Johnson,—which standing alone would not have been sufficient (Central Penna. Telephone Co. v. Thompson, 112 Pa. 118, 3 A. 439),—and warranted a finding by the jury that Goldberg had not only apparent, but also actual, authority to make the contract with plaintiff. See Murphy v. Beverly Hills Realty Corp., 98 Pa. Superior Ct. 183.

It follows that the defendant was not entitled to binding instructions.

On its motion for a new trial, defendant assigns for error the refusal of the court to strike out the testimony of Brown, the district agent of the Railway Express Agency, who had produced the records of that company and testified without objection, to the shipment by ex-

press of goods from said plant at Wyoming, Pa. by defendant, Rosedale Silk Company, during the period of this contract, on the ground that the records had not been made by him personally, but had been sent to him by the official auditors of the company. We have had occasion, in recent years, in view of the great growth and expansion of corporate business, and because of the necessity resulting therefrom, to enlarge the Hearsay rule previously in force, and permit the introduction in evidence of such records and papers when produced by one properly in control of them, even though they were not made by him, where there is nothing in the case to cast any suspicion on their verity or correctness: Lowenstein v. Greenbaum, 65 Pa. Superior Ct. 19; Evans v. Commercial Trust Co., 76 Pa. Superior Ct. 304, 310; John Wanamaker v. Chase, 81 Pa. Superior Ct. 201, 204; Com. v. Grotefend & Haun, 85 Pa. Superior Ct. 7, 10; Knina v. Levine, 86 Pa. Superior Ct. 92, 95; Oswald Machinery Co. v. Farnsworth, 101 Pa. Superior Ct. 506, 512, 513; Com. v. Long, 118 Pa. Superior Ct. 357, 362, 179 A. 806. See also, Wm. Zoller Co. v. Hartford Fire Ins. Co., 272 Pa. 386, 116 A. 359; Ehmling v. Ward, 279 Pa. 527, 531, 124 A. 181; Specktor v. Victory Ins. Co., 282 Pa. 429, 432, 128 A. 95. This is especially the case, where, as here, the corporation is wholly disinterested and the official in charge and control of the records or papers has been subpoenaed to produce them. The fifth assignment of error is overruled.

The sixth assignment relates to the testimony of Peppe, that in his talks with his fellow employees they stated they were working for Rosedale Silk Company. According to the strict rules of evidence, it, probably, should not have been received. But in view of the undisputed evidence in the case, the testimony of Pearlman as to his use of the name, Rosedale Silk Company, to obtain credit, and the admission of defendant's counsel above referred to, its reception could have done the

defendant no material harm. In view of the other evidence in the case it should not necessitate a re-trial.

The other assignments, because of what we have already said in this opinion, do not merit extended discussion. They are all overruled and the judgment is affirmed.

Judge JAMES took no part in the consideration or decision of this case.