## Matko v. Citizens National Bank of Connellsville.

*Banks—Transmitting money to foreign country—Loss due to depreciation of foreign money—Liability to depositor.*

A bank which receives from its depositor a certain sum of money to be converted into funds of, and remitted to, a foreign country is not liable to the depositor for loss due to depreciation of the foreign money during a delay of five years in delivery by the bank's foreign correspondent, where the delay was due to the existence of war and defendant used due diligence in the selection of its foreign correspondent and transmitted the money promptly in the usual course of banking business.

Assumpsit against a bank for loss due to depreciation of foreign money C. P. Fayette Co., Sept. T., 1921, No. 499.

*Crow, Shelby & Tabor,* for plaintiff.

*Sterling, Higbee & Matthews,* for defendant.

HUDSON, P. J.—Mike Matko, the plaintiff, on April 24, 1916, went to the foreign department of the Citizens National Bank of Connellsville, Pennsylvania, defendant, and left $232 for the purchase of 1600 kronen, to be remitted to his wife, Marta Matko, in Brlenio, Croatia. He was given a receipt by the bank, which is as follows:

"CITIZENS NATIONAL BANK
"Successor to Exchange Bank of F. A. Kail
"Capital $100,000.00        Established 1889        Surplus $125,000.00
"Connellsville, Pa., U. S. A.                Budapest (Hungary)
"No. 60003
"Received of . . . Mike Matko . . . $232 . . . for . . . 1600 Kruna . . . for remittance to . . . Marta Matko.

"THE CITIZENS NATIONAL BANK,
"Foreign Department
"Connellsville, Pa., Apr. 24, 1916.        By F. A. Kail . . . Mgr."

The clerk in the bank told him that in nine weeks his wife would receive the money. The plaintiff did not return to the bank for almost five years to inquire whether or not the money had been delivered. In March, 1921, the bank wrote him that the Hungarian Discount and Exchange Bank, of Budapest, Hungary, would send him a deposit book showing the deposit of 1600

kronen. When this book was tendered him, he refused to accept it on account of the value of kronen. The 1600 kronen at that time had a value of only $3.20 in our money.

It appears from the testimony of the defence that the Citizens National Bank within three days remitted 1600 kronen to the Hungarian Discount and Exchange Bank, of Budapest, Hungary, and the same were received. The defendant had done business with this bank for a period of twenty-five years, and it was a thoroughly reliable banking institution. On account of the war, the mail service having been discontinued, it was over two years before the defendant learned that the remittance had not been delivered. The Hungarian Discount and Exchange Bank wrote that on account of Croatia, which was formerly a province of Austria-Hungary, being taken away from Hungary, they could not make the remittance. The 1600 kronen were never returned by the bank to the defendant.

At the conclusion of the testimony, the late Honorable J. Q. Van Swearingen, who presided at the trial of the case, directed the jury to return a verdict for the plaintiff for the sum of $338.32, being the amount of the claim, with interest. The case comes before us on a motion for new trial and for judgment non obstante veredicto.

It seems to us that the only question for our determination is whether or not the evidence justifies the conclusion that there was an agreement between the plaintiff and the defendant that the 1600 kronen were to be delivered to Marta Matko in Brlenio, Croatia. If there were such an agreement, then the verdict should be for the plaintiff; if there was an agreement that the money was only to be remitted or transferred to Marta Matko, then the verdict should be for the defendant.

The receipt for the money does not justify the conclusion that the money was to be delivered. Is there anything in the parol testimony from which we can find that the defendant agreed to deliver this money? We do not think that there is. It is true that the bank clerk told the plaintiff that his wife would receive this money in nine weeks, but we do not think that this amounts to an agreement to deliver.

There is no question that the money was promptly sent by the defendant and received by the Hungarian Discount and Exchange Bank of Budapest, its sub-agent, and it is not claimed that the Hungarian Discount and Exchange Bank was not a reliable banking institution. The contract between the parties was simply an agreement to send this money through the ordinary banking channels to Marta Matko, at Brlenio, Croatia. An agreement to remit or transmit money is only an agreement to send, and not an agreement to deliver.

We think that the agreement between the parties was fully complied with when the defendant bank exercised reasonable care and diligence in the selection of the Hungarian Discount and Exchange Bank, its sub-agent, to which the money was promptly transmitted in the ordinary course of banking business. As was said by the court in Davis v. First National Bank of Fresno, 50 Pac. Repr. 666: "In making the collection the bank was acting as the agent of the plaintiff, and, from the nature of the transaction, was required to employ a sub-agent, and, as the agent of the plaintiff, was bound to exercise reasonable care and diligence, as well in the employ of its sub-agent as in the discharge of any other of the duties assumed by it. If, in making the collection, it followed the course usually taken by banks under similar circumstances, it cannot be held to have been negligent." This is the law in Pennsylvania, Massachusetts, California and many other states.

Cosmopolitan State Bank, Inc., v. W. Harry Barnes and Mattie E. Barnes.

As sustaining our position, see Farmers National Bank of Beaver Falls v. Nelson, 255 Pa. 455; Weissman v. M. L. Blitzstein & Co., 3 D. & C. 5; Nicoletti v. The Bank of Los Banos, 214 Pac. Repr. 51; Katcher v. American Express Co.,·109 Atl. Repr. 741; Fliker v. State Bank, 159 N. Y. Supp. 730; Sommer v. Taylor, 190 N. Y. Supp. 153; Alemian v. American Express Co., 130 N. E. Repr. 253.

### Order.

And now, July 13, 1926, for the reasons above set forth, a new trial is refused, and the reasons given therefor dismissed. The motion for judgment *non obstante veredicto*, however, is sustained. The verdict of the jury is set aside, and judgment is directed to be entered in favor of the defendant *non obstante veredicto*.                    From Luke H. Frasher, Uniontown, Pa.