# Hanna *versus* Holton.

1. The assignment of a security to a creditor to hold as collateral security of his debt, establishes a privity of contract, which invests him with the ownership of the collateral for all purposes of dominion of the debt assigned.

2. When the collateral is lost by the insolvency of the debtor in it, through the supine negligence of the creditor, he must account for the loss to his own debtor.

3. Plaintiff assigned to defendant a judgment against Jackson, the lien of which expired September 1863, as collateral for money lent to plaintiff; defendant neglected to revive the lien; Jackson sold his land July 1866 and the judgment against him was lost. *Held* that defendant was liable to plaintiff on the ground of negligence.

4. Jackson, at the sale of his land, was solvent, and the judgment was collectible. He afterwards died insolvent. *Held* that the Statute of Limitations began to run from the time of the sale, not from the time when the lien expired.

January — 1873. Before READ, C. J., AGNEW, WILLIAMS, and MERCUR, JJ. Re-argued at Harrisburg, June 1st 1874.

Error to the Court of Common of Pleas *Chester county:* Of January Term 1872, No. 250.

This was an action on the case, brought October 6th 1870, by Alexander Holton against William Hanna, to recover damages for negligence, in not reviving and continuing the lien of a judgment against Jackson A. Holton, in favor of the plaintiff, which had been assigned to the defendant as collateral security for money borrowed by the plaintiff from him.

[Hanna v. Holton.]

The defendant pleaded " Not Guilty" and the Statute of Limitations.

On the 19th of March 1858, Jackson A. Holton executed to the plaintiff a bond with warrant of attorney to confess judgment for $1000, payable in five years with interest; judgment on this bond was entered by virtue of the warrant of attorney on the 27th of September 1858; it was the first lien and well secured on a farm belonging to Jackson A. Holton. On the 22d of October 1860, the plaintiff borrowed from the defendant $550, for which he gave his bond payable on the 25th day of the next March, and assigned as collateral security, the bond and judgment above mentioned against Jackson A. Holton, the judgment being marked on the record for the use of the defendant as collateral security for the debt of plaintiff to defendant. On the 27th of September 1863, the lien of the plaintiff's judgment against Jackson A. Holton expired, and was not afterwards revived. On the 14th of July 1866, Jackson A. Holton sold his farm, which was all the real estate that he owned; he received all the purchase-money, and the bond to the plaintiff remained unpaid. Jackson A. Holton died insolvent on the 8th of January 1867, and the bond of the plaintiff against him was entirely lost.

These facts appeared on the trial November 14th 1871, before Butler, P. J.

The defendant's points were :—

1. The Statute of Limitations bars the plaintiff's recovery.

2. It was not the duty of the defendant to pursue Jackson A. Holton for the collection of the bond assigned as collateral security, or of the judgment entered upon it.

3. It was not the duty of the defendant to cause the lien of the judgment, marked to his use as collateral security, to be revived.

4. The plaintiff having obligated himself to pay the defendant the $550 bond, nearly two years before the $1000 bond assigned as collateral security was payable or could be collected, and two years and a half before the lien of the judgment entered upon it had expired, and having neglected to pay the $550 bond, he was in default to the defendant, and there was no further duty on the defendant to the plaintiff with reference to said assigned bond or to said judgment.

The court answered the points as follows :—

" We cannot charge the jury as requested by the first point—that ' the Statute of Limitations bars the plaintiff's recovery.'

" We think it does not. We do not regard the neglect to revive the lien at the expiration of the first five years as the cause of action, but the continued neglect of the judgment thereafter, which resulted in its loss.

" The negligence commenced at the period indicated, and continued up to the time the land was sold, at least.

[Hanna *v.* Holton.]

" The redress sought is nôt for the loss of the lien, in 1863, but for the loss of the value of the judgment. This latter loss was not sustained when the lien first expired; nor until the land was parted with and the debtor had become insolvent, years after. If the judgment had been re-assigned upon the expiration of the lien, and the plaintiff, lying still until the sale of the land and insolvency of the debtor, had brought suit in 1866, for the loss of his property, basing his claim upon the original neglect to revive, he certainly would have been answered that the loss did not result from this, but from subsequent negligence of his own; and it would have been conclusive. If an action had been brought upon the expiration of the lien, the complaint could not have been what it now is —negligence—whereby the value of the judgment was lost. It must have been negligence by which one of its incidents merely (the lien) was lost; and as this could then have been readily restored, and the plaintiff placed where he was before, the damages, if any, must have been virtually nominal.

" The question raised by the point is, however, a very interesting one, and we regret that the time afforded us will allow of no more than this very brief indication of the ground on which we dispose of it.

" The remaining points are also disaffirmed. We will not say that it was the duty of the defendant, under the circumstances shown here, to issue execution for the collection of the judgment, so long as its lien continued on the land; but we think it was his duty to take care that the lien continued; that the hold upon the land was preserved; and that the judgment did not, while in his hands, become. less secure, or less valuable, by reason of any omission of his."

*W. B. Waddell* and *P. F. Smith* (with whom was *G. F. Smith*), for plaintiff in error.—The bond and judgment being assigned, not for collection but as collateral, the defendant incurred no responsibility but from positively detrimental acts : United States *v.* Simpson, 3 Penna. R. 437 ; Mundorff *v.* Simpson, 5 Watts 172 ; Morrison *v.* Hartman, 2 Harris 55 ; Bank United States *v.* Peabody, 8 Harris 454. As to the Statute of Limitations, the cause of action accrued when the negligence occurred, irrespective of the time when the consequential loss accrued : Miller *v.* Wilson, 12 Harris 114 ; Wilcox *v.* Plummer, 4 Peters 172 ; Howell *v.* Young, 5 B. & C. 259 ; Funk *v.* Smith, 16 P. F. Smith 27 ; Rhines *v.* Evans, Id. 192 ; Crawford *v.* Gaulden, 33 Geo. 173 ; Stephens *v.* Downey, 3 P. F. Smith 424.

*W. McVeagh* and *J. J. Lewis*, for defendant in error.—The transfer of Jackson A. Holton's bond as collateral put it wholly for the purposes of care, protection, &c., in the hands of the de-

[Hanna v. Holton.]

fendant; and the plaintiff had no right to exercise any control over it. Whilst the defendant below held the collateral security, his duties towards it were active, and he was bound to use due diligence in regard to it. If, at the termination of such bailment, the collateral security was less valuable by reason of the negligent conduct of the defendant while it was in his hands as collateral security, an action for the loss accrued to the plaintiff against the defendant: Lyon v. Huntingdon Bank, 12 S. & R. 68; Lishy v. O'Brien, 4 Watts 141; Beale v. The Bank, 5 Id. 529; Miller v. The Gettysburg Bank, 8 Id. 192; Dyott's Estate, 2 W. & S. 490; Mullen v. Morris, 2 Barr 85; Spalding v. The Bank, 9 Id. 28; Insurance Co. v. Smith, 1 Jones 120; Sellers & Nichols v. Jones, 10 Harris 427; Williamson v. McClure, 1 Wright 410; Insurance Co. v. Marr, 10 Id. 507; Runel v. Heister, 10 Ala. 535; Cardin v. Jones, 23 Geo. 175; Stevin v. Morrow, 4 Ind. 425; Noland v. Clark, 10 B. Mon. 239; Bank v. Martin, 1 La. Ann. 340; Jemison v. Parker, 7 Mich. 355. As to the Statute of Limitations, no right of action accrued till July 14th 1866, when J. A. Holton sold his land; for until then there was no loss to the plaintiff. The duty of conducting the litigation is an entire duty, extending from its beginning to its close, and any action concerning it, whether for liability for negligence in conducting it, may await its conclusion without danger from the Statute of Limitations, unless the negligence is sooner known: Foster v. Jack, 4 Watts 339; Derrickson v. Cady, 7 Barr 27; Lichty v. Hugus, 5 P. F. Smith 434; Overton v. Tracey, 14 S. & R. 311; Leinhart v. Forringer, 1 Penna. R. 492; Jones v. Trimble, 3 Rawle 381; Poe v. Foster, 4 W. & S. 351; Lytle v. Mehaffy, 8 Watts 267; Vanhorn v. Scott, 4 Casey 316; Evans v. Lee, 11 Harris 88; Bank v. Waterman, 26 Conn. 324; Insurance Co. v. Marr, 10 Wright 504; Newbert v. Cunningham, 50 Maine 231; Hancock v. Wilhoite, 1 Duvall 588; Polly v. McCall, 37 Ala. 20; Keefer v. Zimmerman, 22 Md. 274; Norton v. Hall, 41 Verm. 471; Bottom v. Williams, 3 Bush 521; Singleton v. Townsend, 45 Mo. 379; Angell on Lim., sect. 173.

Mr. Justice Agnew delivered the opinion of the court, May 17th 1873.

The cases cited for the plaintiff in error are chiefly those of sureties where the indulgence of the creditor was purely permissive, and the surety was therefore held not to be discharged. A creditor who holds a collateral security for the protection of his debt stands in a different relation to the assignor of the collateral, though the latter be his debtor. By the assignment a privity in contract is established, which invests the assignee with the ownership of the collateral, for all purposes of dominion over the debt assigned. He alone is empowered to receive the money to be paid upon it, and to control it in order to protect his right under the

[Hanna *v.* Holton.]

assignment. This is the ground of the creditor's liability for the collateral, as stated by Tilghman, C. J., in Lyon *v.* Huntingdon Bank, 12 S. & R. 68; and also by the court in Beale *v.* The Bank, 5 Watts 530. It is therefore settled in this state that where the collateral is lost by the insolvency of the debtor in the collateral instrument, through the supine negligence of the creditor, he must account for the loss to his own debtor, who invested him with its entire control: Miller *v.* Gettysburg Bank, 8 Watts 192; Bank U. S. *v.* Peabody, 8 Harris 454; Dyott's Estate, 2 W. & S. 490; Chambersburg Ins. Co. *v.* Smith, 1 Jones 120; Sellers *et al. v.* Jones, 10 Harris 427; Lishy *v.* O'Brien, 4 Watts 141; Muirhead *v.* Kirkpatrick, 9 Harris 237; Ins. Co. *v.* Marr, 10 Wright 504. We perceive no error, therefore, in the decision of the court below, that William Hanna must account to Alexander Holton for the loss of the assignment against Jackson A. Holton, by reason of his omitting to keep up its lien, and afterwards failing to proceed to collect it, until Jackson became insolvent.

This action is not founded on the loss of lien alone. That is but a circumstance or one of the facts constituting negligence. Had the failure to revive the judgment been the only cause of the loss of the debt, as under some circumstances it might be, the six years having then elapsed before suit, the Statute of Limitations would have been a bar. But the loss of the lien was not in this instance the sole cause of the loss of the debt. Jackson A. Holton continued solvent, and the judgment remained collectible until 1866, when Jackson sold his property, and actually received a large part of the purchase-money himself. Alexander Holton's debt to Hanna was contracted in October 1860, and he then assigned to Hanna the judgment against Jackson A. Holton as collateral security. The lien of the judgment expired in September 1863; Jackson sold his farm in July 1866, and died insolvent in 1867; Hanna in the meantime taking no step to secure or to collect the judgment, which all this time stood marked to his use on the docket. It is very clear that the real injury to Alexander Holton was not consummated until Jackson sold his farm, and put the proceeds in his pocket. The cause of action then arose, and the statute then began to run. At least, this was the earliest period it could arise, and this was only four years before the commencement of the action. The statute was no bar, therefore, and the judgment is therefore affirmed.

On the re-argument, the judgment was affirmed for the reasons in the foregoing opinion.