# Farmers National Bank of Beaver Falls, Appellant, v. Nelson.

*Promissory notes—Collateral—Pledge—Transmission of collateral for collection—Loss by agent—Liability of pledgee.*

1. A bank, with which commercial paper is left by its customer to be transmitted for collection, is the agent of the owner for transmission only, and is not liable for the negligence or default of its correspondents or agents to whom it is necessary to transmit the paper, if it used reasonable care and diligence in the selection of its agent.

2. Where commercial paper is deposited with a bank as collateral security for payment of an indebtedness due the bank, with its debtor's endorsement upon it, the bank takes the collateral as pledgee of the owner and not merely for transmission for collection. The creditor or pledgee obtains possession and control of the paper and if it matures while the debtor's obligation remains unpaid, the creditor may enforce collection and apply the proceeds to the payment of his debt; as the pledgor has neither the possession nor control of the collateral he is not in position to present it for payment or to have it protested or dishonored; hence, the creditor must take all necessary legal steps to preserve the collateral and if it is lost by his negligence he is responsible to his debtor.

3. Where in such case an agent is selected by the creditor for the purpose of collecting the collateral, such agent acts for the creditor and not for the debtor, and for the negligence of the agent resulting in loss to the debtor the creditor may be held liable.

4. In an action on a promissory note it appeared that defendant makers had deposited with plaintiff bank another note as collateral security for the note in suit; there was evidence that plaintiff had transmitted the collateral note to an agent for collection, and that such agent through negligence had failed to present the note for payment to the only party thereon who was solvent, whereby such party was discharged, and the note rendered uncollectable. The collateral note was of the same face value as the note in suit. Defendants sought to set off the loss incurred through plaintiff's negligence against plaintiff's claim. The trial judge submitted the case to the jury which found a verdict for defendants. The court refused plaintiff's motion for judgment n. o. v. and entered judgment for defendants. *Held*, no error.

Argued Oct. 3, 1916.   Appeal, No. 60, Oct. T., 1916, by plaintiff, from judgment of C. P. Beaver Co., March T., 1914, No. 97, on verdict for defendants, in case of Farmers National Bank of Beaver Falls, Pennsylvania v. D. A. Nelson and David Knight.   Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ.   Affirmed.

Assumpsit on a promissory note.   Before HOLT, P. J. The opinion of the Supreme Court states the facts.

Verdict for defendants and judgment thereon.   Plaintiff appealed.

*Errors assigned* were instructions to the jury, answers to points, the refusal of the court to direct a verdict for plaintiff and to enter judgment for plaintiff n. o. v.

*George C. Bradshaw,* of *Thomson & Bradshaw,* and *Martin & Swaney,* for appellant.—The Peoples National Bank was the agent of defendants for the collection of the collateral note.   The plaintiff could only be held·responsible for the negligence of its subagent if it failed to use reasonable diligence in selecting a suitable subagent: Mechanics Bank of the City & County of Philadelphia v. Earp, 4 Rawle 383; Merchants Nat. Bk. of Philadelphia, v. Goodman, 109 Pa. 426; Bellemire v. United States Bank, 4 Wharton 104.

*A. P. Marshall,* with him *J. H. Cunningham* and *J. F. Reed,* for appellees.—When notes are left as collateral security to be credited when collected, it is the duty of the holder of the collateral to use diligence in the collection thereof and it is responsible for the negligence of agents selected by it for the collection of such collateral: Kemmerer v. Wilson, 31 Pa. 110; Muirhead v. Kirkpatrick, 21 Pa. 237; McQueen's Appeal, 104 Pa. 595; Scott v. First Nat. Bk. of Tulsa, 68 L. R. A. 488; Lishy v. O'Brien, 4 Watts 141.

OPINION BY MR. JUSTICE MESTREZAT, January 8, 1917:

This is an action of assumpsit on a promissory note for $5,000, dated October 19, 1912, made by the defendants, D. A. Nelson and David Knight, and payable to the plaintiff bank four months and six days after date. It recites the deposit therewith, as collateral security, of the note of J. S. Hulings for a like sum, dated February 24, 1912, and payable one year after date. The latter note is payable to T. N. Barnsdall at the Second National Bank, Clarion, Pennsylvania, and is endorsed by T. N. Barnsdall, P. J. Creighton, O. E. Aber, J. M. Friedman, D. A. Nelson and David Knight.

The defense was that the note in suit was given to the bank in lieu of notes negotiated by it for O. E. Aber of like amount, that the collateral note was the only security the defendants had for the indebtedness incurred by them to the bank for Aber, that Barnsdall was perfectly good and responsible for the amount; that they notified the bank of these facts and requested it to be careful and take whatever steps were necessary in the collection of the note when it fell due; that notice of protest of the note for nonpayment was not given Barnsdall who was thereby relieved from liability thereon, and that the failure of the plaintiff to take the necessary steps to preserve the value of the collateral note was an equitable satisfaction of the amount of the note in suit. The pleas were "payment, payment with leave, and set-off."

The defendants were endorsers on notes of O. E. Aber for $5,000 which had been negotiated by the plaintiff bank, and these notes were lifted by defendants and in lieu thereof they gave the note in suit with the Hulings note as collateral security. At the trial of the cause, it appeared that the plaintiff sent the collateral note for collection to its reserve agent, the Peoples National Bank of Pittsburgh, and the latter forwarded the note to the First National Bank of Clarion which presented it for payment at the Second National Bank of Clarion and,

being dishonored, it was protested for nonpayment. The certificate of protest shows that the notice for Barnsdall was mailed to him in care of the Peoples National Bank of Pittsburgh, Pennsylvania, that notice of protest was also mailed to the Peoples National Bank and to the Farmers National Bank of Beaver Falls, Pennsylvania, the plaintiff. Notice of protest was mailed to all the other endorsers in care of the plaintiff bank which mailed all of these notices to the defendant Nelson. The notary testified that he received the addresses, which he put on the certificate, from the First National Bank of Clarion. Barnsdall, who was corroborated by his employee, and was uncontradicted, testified that he never received any notice of protest. Aber testified that, sometime prior to the maturity of the collateral note, he had given to the cashier and assistant cashier of the plaintiff bank the addresses of all the endorsers, that of Mr. Barnsdall being the Farmers Bank Building, Pittsburgh, where he had his office. Both officials of the bank contradicted Aber's testimony. Mr. Nelson testified that he told the cashier of the bank that the collateral note was good, that he and Knight had nothing but it as security for the note which they gave to the bank, and to be careful and take care of the note.

The learned trial judge instructed the jury that in transmitting the collateral note for collection the plaintiff was not liable for the negligence of any of its correspondents or subagents through whose hands the note passed, and that they were deemed the agents of the owners of the note for the purpose of presentation, payment, protest and notice of dishonor; that the only material question for their consideration was whether the plaintiff bank was negligent in not sending with the notice for collection the correct business address of Barnsdall; that if Aber gave Barnsdall's proper address to the bank and they believed that Nelson had cautioned the bank as to the necessity for collection from Barnsdall and they found that the bank was negligent in fail-

ing to send Barnsdall's correct business address, then, if this negligence was the proximate cause of the failure to notify Barnsdall, the plaintiff bank was responsible for any loss thereby resulting to the defendants, and, if Barnsdall was financially able to pay the collateral note, the defendants were entitled to a set-off to the amount of the damages sustained, which would be the amount of the collateral note. It seems to be conceded, as the case was tried on the theory, that all the parties to the collateral note except Barnsdall were insolvent. There was a verdict and judgment for the defendants, and the plaintiff has appealed.

We think there is a clear distinction between the duty and liability of a bank where it receives commercial paper for collection and where the paper is deposited with it as collateral security for a loan made by it to the owners of the collateral. While a different rule prevails in some other jurisdictions, we have uniformly held that a bank with which commercial paper is left by its customers to be transmitted for collection is the agent of the owners for transmission only and is not liable for the negligence or default of its correspondents or agents through whom it is necessary to transmit the paper, if it has used reasonable care and diligence in selecting such agents. In 1 Mechem on Agency (2d Ed.), Sec. 1314, the learned author says: "In the majority of the states......it is held that the liability of the home bank, in the absence of instructions or an agreement to the contrary, extends merely to the selection of a suitable and competent agent with proper instructions, and does not involve responsibility for the default or misconduct of the correspondent bank.......This rule is adopted in Pennsylvania." The ground upon which this rule rests is that the contract of, or the duty assumed by, the home bank is to transmit, with proper instructions, the note or bill for collection to its correspondent bank, and the latter becomes the agent of the owner to make the collection and is responsible to him for any loss occasioned by its neglect of duty. In

Mechanics Bank of the City & County of Philadelphia v. Earp, 4 Rawle 383, one of the earlier cases in this State dealing with the subject, bills were sent by a bank in Philadelphia to its correspondent in Virginia for collection and not being presented were lost. In an action against the home bank, the court said (p. 386) : "The undertaking (of the bank) clearly was, to transmit the bills, with the directions upon them, to their correspondent in Virginia.......The defendant bank was the agent for the transmission of the bills, and their correspondent the agent for their collection." In Merchants' Nat. Bank of Philadelphia v. Goodman, 109 Pa. 422, after citing the cases holding the same doctrine, the court says: "In our own State the principle has, in several instances, been maintained that a collecting bank is an agent for transmission to a subagent to collect, and when this is properly done, its duty is performed and its responsibility is at an end."

When, however, commercial paper is deposited with a bank as collateral security for payment of an indebtedness due the bank, with its debtor's endorsement upon it, the bank takes it as pledgee of the owner and not merely for transmission for collection. The creditor or pledgee obtains possession and control of the paper and, if it matures while the debtor's obligation remains unpaid, the creditor may enforce collection and apply the proceeds to the payment of his debt. The pledgor has neither the possession nor control of the collateral and, therefore, is not in a position to present it for payment or acceptance and, if dishonored, to have it protested. Hence it is clear, we think, that the creditor must take all necessary legal steps to preserve the collateral and if it is lost by his negligence he is responsible to his debtor. "The holder of collateral security," says the court in Muirhead v. Kirkpatrick, 21 Pa. 237, "is bound to preserve it (collateral) or collect it and apply it for the benefit of the assignor.......His duties in respect to it are active He is to employ reasonable diligence

in collecting the money on the security, and applying it to the principal debt." In delivering the opinion in Hanna v. Holton, 78 Pa. 334, 337, Mr. Justice AGNEW said: "He (the pledgee of collateral security) alone is empowered to receive the money to be paid upon it, and to control it in order to protect his right under the assignment. This is the ground of the creditor's liability for the collateral......It is therefore settled in this State that where the collateral is lost......through the supine negligence of the creditor, he must account for the loss to his own debtor, who invested him with its entire control." The same doctrine prevails in other jurisdictions. See 1 Bolles on Banking 243 and notes, also note to Miller v. Gettysburg Bank, 34 Am. Dec. 449.

It, therefore, being the duty of the creditor to protect the collateral for his debtor, we think it follows that the agent selected for the purpose by the creditor acts for him and not for his debtor, and that for the negligence of his agent resulting in loss to the debtor the creditor is responsible. The debtor can exercise no control over the matter, and has no choice in selecting the agent. It would be a harsh rule which, under such circumstances, would relieve the creditor of the responsibility for the acts of his own agent and place it on the debtor. The duty of protecting the collateral resting upon the creditor, it is for him to meet it by himself or agents for whose acts he is responsible.

In the case in hand, the jury found that the failure to give notice of protest to Barnsdall was the negligent act of the plaintiff's agent, and, therefore, judgment was properly entered on the verdict for the defendant.

For the reasons stated, the judgment is affirmed.