## First National Bank of New Wilmington, to use, v. Getty, Exrx., Appellant.

---

[1] See Bulwer Lytton's 'Tomlinsoniana'—addendum to 'Paul Clifford'—Maxim III.

Argued April 16, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

328

*William McElwee, Jr.,* for appellant.

*William D. Cobau,* with him *W. Walter Braham* and
*J. Glenn Berry,* of *Braham, Cobau & Berry,* for appellee.

OPINION BY STADTFELD, J., July 18, 1935:

This proceeding originated as an action of assumpsit
in the Court of Common Pleas of Lawrence County,
Pennsylvania, wherein R. H. Wilson, Receiver of The
First National Bank of New Wilmington, Pa., was the
use plaintiff and Prudential Insurance Company of
America was the defendant.

The Receiver's statement of claim discloses that the
suit was brought to recover the sum of $2,000 alleged
to be due and owing the Receiver upon a policy of life
insurance issued by the insurance company upon the
life of Howell T. Getty on February 4, 1911. On its
face this policy was made payable to the executors, ad-
ministrators or assigns of the insured. Howell T. Getty
died March 17, 1933, while this policy was in full force
and effect.

The statement of claim avers that Howell T. Getty
for many years prior to his death had been cashier of
The First National Bank of New Wilmington, Pa.; that
on May 7, 1931, about two years prior to his death he
had borrowed $15,000 from the bank and as security
therefor had delivered to the bank his collateral judg-

ment note in that amount and pledged certain securities; that on the date of Getty's death there was a principal balance of $9,667.20 unpaid on this note and that no part of this has since been paid; that on or about March 2, 1933, Getty wrote on the note in the space reserved thereon for the listing of securities deposited as collateral security for the debt, the words "$5,000 life insurance policies" and at the same time delivered to the bank two life insurance policies, one of which is the policy in suit; that at the same time he wrote to the insurance company stating that he was assigning the policy in suit to the bank as collateral on a loan and requested the insurance company to make the notation on its books; that Getty's action in this matter was prompted by a demand of L. P. Hauschild, a national bank examiner, that Getty must put up additional collateral on his note, which Getty had orally promised to do during the latter part of February, 1933.

The insurance policy has been in the possession of the bank or of the use plaintiff since its delivery as aforesaid. The use plaintiff was appointed Receiver for the bank, which had become insolvent subsequent to the happening of the matters aforesaid.

The Receiver based his right to recover the proceeds of this insurance policy from the insurance company upon the alleged assignment or pledge of the insurance policy as collateral security for the note.

Subsequent to the service of the Receiver's statement of claim upon it the insurance company entered its appearance by counsel and, on September 22, 1934, filed a petition for an interpleader admitting its liability on the policy, but averring that the proceeds were also claimed by Carrie D. Getty, executrix of the estate of Howell T. Getty. Upon this petition, and by agreement of counsel representing the Receiver and the executrix, the court directed that the Receiver and the executrix interplead as to their respective rights to the proceeds

of the policy, and that an issue be framed to try the facts wherein the Receiver should be plaintiff and the executrix defendant.

On October 4, 1934, the executrix filed her petition under the Act of 1925, P. L. 23, questioning the jurisdiction of the Common Pleas Court to decide the controversy between herself and the Receiver as to their rights to the proceeds of the insurance policy. The court issued a rule on the Receiver to show cause why the case should not be dismissed to which rule the Receiver filed his answer. Depositions were taken on the part of the executrix. Upon the petition, answer and depositions so taken, the question of the jurisdiction of the Common Pleas Court was argued before the court en banc.

On January 14, 1935, the court in an opinion and order, by HILDEBRAND, P. J., discharged the rule and sustained the jurisdiction of the Common Pleas Court to determine the rights of the parties to the interpleader to the proceeds of the policy, and from his order the executrix has appealed.

The ultimate question involved in this case is whether the Court of Common Pleas of Lawrence County has jurisdiction to determine, under an interpleader proceeding, the respective rights of the Receiver and the executrix to the proceeds of the life insurance policy. The Receiver claims the proceeds under an alleged assignment or pledge of the policy by the insured during his lifetime as collateral security on an obligation now owned by the Receiver.

Appellant's claim is based on the contention that the property pledged as collateral security was an asset of the estate, and the jurisdiction to make distribution thereof is in the Orphans' Court, and that the Common Pleas Court is without jurisdiction.

The averment in the petition, that there never was an assignment of the policy in question, must be con-

sidered merely as a conclusion, since there is no denial of the averment in the statement of claim that the policy was pledged or assigned and delivered to the bank by Mr. Getty, and that the same was held by the bank at the time of the death of the said Howell T. Getty, and ever since, as collateral security on a note of the said Howell T. Getty to the bank. The petition further avers that on March 2, 1933, the date of the alleged assignment of the policy, as also in the latter part of February, 1933, the said Howell T. Getty was insolvent; also that on January 29, 1934, at a meeting on the audit of said estate, before the auditor appointed by the Orphans' Court, the said R. H. Wilson, Receiver, appeared and presented a claim against the estate on the note for the payment of which the policy was part of the collateral, and that the jurisdiction of the Orphans' Court had already attached prior to the institution of the suit of the plaintiff against the defendant company which was entered on July 27, 1934.

It may be assumed, for the purpose of this appeal, that the policy was in the possession of the bank and had been pledged or assigned, validly or otherwise, at the time of Mr. Getty's death.

The first question for our consideration is what was the effect of the pledge or assignment to the bank and the latter's rights thereunder?

Appellant contends that even if the policy was validly pledged or assigned to the bank, the title thereto was in the decedent at the time of his death and is now in the appellant executrix. There is no question as an abstract proposition of law that upon a contract of pledge the general property in the thing pledged remains in the pledgor, and only a special property vests in the pledgee, and the latter acquires no interest in the property except as security for his debt. Regardless, however, as to who retains the technical legal title, a contract of pledge or a contract of assignment as

collateral security gives to the pledgee or assignee the undoubted right to collect and realize upon the pledged or assigned chose in action. In 49 Corpus Juris 1019, it is stated, "A pledgee has the right to enforce and collect a pledged chose in action by suit thereon." To same effect see Farmers National Bank v. Nelson, 255 Pa. 455, 100 A. 136, and Muirhead v. Kirkpatrick, 21 Pa. 237. As stated by Mr. Justice Agnew in Hanna v. Holton, 78 Pa. 334, 337: "He (the pledgee of collateral security) alone is empowered to receive the money to be paid upon it, and to control it in order to protect his right under the assignment."

The legal title which the executrix may have to this policy is subject to all of the contract rights which the receiver had during Mr. Getty's lifetime. If the contention of appellant be correct then all banks and persons holding collateral security in the form of bonds, stocks or personal property, would be unable to realize on them if the pledgor or assignor should happen to die, except with the consent of the personal representative. In the absence of this consent the pledgee or assignee would be compelled to await an audit before its right to collateral might be confirmed, and meanwhile the value of the collateral might be seriously impaired. On the other hand, if the position of appellant be correct that the title to the asset is in her and she is chargeable with its full value, then she would have to be conceded the right by law to dictate to the receiver when and on what terms the collateral should be realized upon. This would be contrary to the law that the receiver has the right to determine how the collateral shall be realized upon, and that the receiver is chargeable for lack of diligence in realizing thereon: Farmers National Bank of Beaver Falls v. Nelson, supra.

There is no process by which the insurance company could be brought into the Orphans' Court and com-

pelled to pay the insurance proceeds to the executrix: Cutler's Estate, 225 Pa. 167, 73 A. 1111. It ha's the undoubted right to insist that it be sued in the Common Pleas Court, and to have determined by that court to whom it is liable. If the jurisdiction of the Common Pleas Court properly attached, it is not ousted even though the respective claims of the receiver and the executrix might under some other procedure have been properly adjudicated in the Orphans' Court.

The fund in question is in the Orphans' Court if at all only because the executrix has seen fit to include it as an asset in the inventory which she filed. The receiver certainly is not bound by this action of the executrix. She has, in fact, never been in possession of the policy. The possession thereof was essential to a recovery to bring the fund into distribution. She would not be entitled to possession except upon the payment of the note for which it was pledged as collateral. The actual proceeds of the policy are not even today in the control of the Orphans' Court.

In Corson's Estate, 137 Pa. 160, 20 A. 588, the Orphans' Court refused to assume jurisdiction of a controversy arising out of a claim by a third party that certain assets included within the executrix' account as belonging to decedent in fact belonged to the third party, the court so holding because as it stated "a suit in equity for the recovery of these securities was then pending in the Court of Common Pleas, and that was the proper tribunal to settle the questions raised by the bill and answer. It had undoubted jurisdiction of the subject; and was proceeding in due course to a decision."

It seems to be clear, under the authorities, that under the circumstances of the instant case, where the policy is in the possession of plaintiff, under a color of title, and never has been in the possession of the executrix, the Court of Common Pleas has jurisdiction to deter-

mine the present controversy. For a full discussion of the cases in which the Orphans' Court has jurisdiction, see opinion by Mr. Justice MOSCHZISKER in Williams' Estate, 236 Pa. 259, 84 A. 694.

The jurisdiction of the Common Pleas Court as to a determination of the title of the receiver to the policy in question, was not affected by the act of the receiver in presenting his claim on the collateral note at the audit of the executor. It is a familiar principle of law well stated in 49 Corpus Juris, 987, that "Upon default of the pledgor in the payment or discharge of the principal obligation, the pledgee, notwithstanding he has taken collateral security, and has a lien thereon for his debt, may, in the absence of a stipulation to the contrary, proceed against the pledgor personally on the debt or liability secured." This principle is recognized and followed in the following Pennsylvania cases: Thorn's Case, 2 Pa. 331; Ritter v. Henning, 10 Pa. Superior Ct. 458; Jennings v. Loeffler, 184 Pa. 318; and it is immaterial that the debtor or pledgor be insolvent, Lewis v. Bank of Penn Township, 3 Wharton 530; Brough's Estate, 71 Pa. 460.

In the latter of these cases which involved distribution of an insolvent's assigned estate the court states with reference to the claim of a creditor with security: "It is clear ...... Howard Hinchman (the creditor) was entitled to a dividend (from the assigned estate) on the whole balance of his account as it stood at the date of the assignment."

The receiver properly might pursue concurrently his remedy in the Orphans' Court on the principal obligation and his remedy in the Common Pleas Court on the security. He would be entitled to a distribution at the audit of the estate based upon the unpaid balance of his principal obligation. By proceeding at the audit on the note he did not thereby confer jurisdiction upon the

Orphans' Court to pass on the question of title to the policy.

The question of insolvency at the time of the pledge or assignment is not a matter for the consideration of the court in passing on the question of jurisdiction.

We see no error in the failure of the court to specifically answer the defendant's requests for findings of fact and conclusions of law. The proceeding providing for preliminary determination of questions of jurisdiction, is applicable only where there is a question of jurisdiction over the defendant or the cause of action for which the suit is brought, and does not furnish a short cut to a determination of the issues of law or fact raised by the pleadings, however clear their ultimate determination appears to be. Lackawanna County v. James, 296 Pa. 225, 145 A. 817; Rutherford Water Company v. City of Harrisburg, 297 Pa. 33, 146 A. 113.

We believe the lower court correctly disposed of the questions involved in this case. The assignments of error are overruled and the order of the lower court affirmed.