Wilson, to use, Appellant, *v.* The Prudential
Insurance Company of America.

Argued April 27, 1936.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER, JAMES and RHODES, JJ.

*John C. Arnold,* with him *D. Edward Chaplin,* for
appellant.

*Abe J. Goldin,* for appellee.

OPINION BY BALDRIGE, J., September 30, 1936:

The question involved in this appeal is whether the holder of a life insurance policy under an assignment by the insured and the sole beneficiary may recover after default of the debtor the surrender value of the policy from the insurer, where the insured could have borrowed on the policy more than enough to pay the debt.

On March 31, 1920, Ralph M. Peterman, the insured, borrowed $400 from Mrs. S. C. Wilson, evidenced by a judgment note, payable one year from date, with interest. Peterman and his wife, the sole beneficiary, assigned to Mrs. Wilson "as interest may appear," as collateral security for the indebtedness, a 20-year endowment insurance policy, dated June 19, 1918, taken out in the defendant company. A copy of the assignment was filed with, and approved by, the insurance company and delivered to Mrs. Wilson with the assigned policy.

Mrs. Wilson died, testate, August 13, 1922, and Cloyd B. Wilson, the use-plaintiff, was named executor and principal legatee in her will. He entered judgment on the note, March 25, 1935, for the sum of $657.82, with interest, attorneys' fees, and costs. A writ of scire facias was issued and an affidavit of defense thereto was filed. After trial, plaintiff obtained a judgment for the full amount of his claim, to wit, $713.56, with interest from December 4, 1935.

Peterman, in the meantime, had continued to pay the premiums on the policy, so that by June, 1935, the cash surrender and loan value was $978. On February 28, 1935, Cloyd B. Wilson's attorneys notified Abe J. Goldin, Esq., Peterman's attorney, that if the indebtedness was not paid, the policy would be surrendered for its cash value. Peterman paid no attention to the notice and plaintiff requested the defendant insurance company to pay him the cash surrender value of the

policy in exchange for its delivery. The company refused this request unless the joint signatures of the beneficiary and the insured were obtained.

This suit was then brought against the Prudential Insurance Company to recover the cash surrender value. Plaintiff's statement averred the facts above recited. An affidavit of defense was filed raising the legal questions of law that the paper signed April 20, 1920, was not an absolute assignment, and that under the terms of the policy the plaintiff was not entitled to recover.

The learned court below entered judgment for the defendant, mainly for the reason that as the assignment contained the words "as interest may appear" it was not absolute, and that therefore the creditor-assignee was not entitled to obtain the cash surrender value of the policy. Doubt was also expressed by the court whether plaintiff's statement contained a sufficient averment of notice to the insured of his intention to surrender the policy.

Peterman was not joined as a party defendant in this action, but Mr. Goldin argued the appeal which followed in this court.

In *Lemley v. McClure,* 122 Pa. Superior Ct. 225, 185 A. 878, we held that an assignment of a policy by an insured and the sole beneficiary to a creditor "as his interest may appear" was valid, that the creditor could recover the amount of the indebtedness due him, when the policy was payable, to wit, upon the death of the insured. That decision however, did not determine whether a creditor-assignee is entitled to collect during the lifetime of the insured, against the latter's wishes, the cash surrender value of the policy to pay his due debt. The assignee's right to recover depends primarily upon the provisions of the policy.

The policy contains the following clause: "Cash Surrender Value.—If this Policy be legally surrendered to

the Company......and if all premiums......have been paid in full, the Company will pay therefor the sum indicated by the following table......"

Is this provision broad enough to permit a surrender of the policy and require the cash surrender value thereof to be paid to some one other than the insured?

It will be noted that the language used is entirely impersonal. It does not expressly state that the privilege to surrender is to be exercised by the insured alone, as in *Emery v. Manhattan Life Ins. Co.* (Ky.), 200 S. W. 19 (1918); on the other hand, it does not definitely provide that upon default the assignee may surrender the policy for its cash value, as in *Toplitz v. Bauer* (N. Y.), 55 N. E. 1059 (1900); *Palmer v. Mut. Life Ins. Co.,* 77 N. Y. Supp. 869 (1902). See, also, *Salig v. U. S. Life Ins. Co.,* 236 Pa. 460, 84 A. 826.

In *Entwistle v. Travelers' Ins. Co.,* 202 Pa. 141, 51 A. 759, the policy contained a provision that it could "be converted into cash at the option of the holder." The court interpreted "holder" to mean the insured and all the beneficiaries, and held that the assignee who received an assignment from the insured and only one of several beneficiaries could not convert the policy into cash. This case is not exactly in point, but it is significant that the court, in a dictum, recognized that a proper assignment would give the assignee this right, in stating: "But however that may be, it is manifest that the option can only be exercised by those having the full legal interest in the policy, *or by their assignee.*" (Italics supplied.)

The question we are now considering has not been squarely decided in Pennsylvania and the cases in other jurisdictions are not in entire accord. Cooley's Briefs on Insurance, vol. 5 (2d ed.) p. 4731, states: "One to whom a policy has been assigned as collateral is not thereby authorized to surrender it for its cash value before maturity and without notice"; citing, in

support of the text, *Dungan v. Mutual Life Ins. Co.*, 46 Md. 469 (1877) ; *Manton v. Robinson* (R. I.), 37 A. 8 (1896). Those cases appear to have been decided adversely to the assignee, due, mainly, to the failure to notify the insured. It will be observed that in the case at bar notice is alleged to have been given.

The general weight of authority seems in favor of holding that the right to surrender is not personal to the insured, unless so stipulated, and may be exercised by an assignee if notice of intention so to do is given by him to the insured.

In *Mutual Benefit Life Ins. Co. v. First Nat. Bank* (Ky.), 169 S. W. 1028 (1914), a leading case, the terms of the assignment were very similar to those in the instant case. The policy, as the one we are considering, did not definitely state that the right to receive its cash surrender value was vested in the insured alone; it simply provided for a cash value to be paid by the company upon the surrender of the policy fully receipted. The court there said: "It is patent from the language of the assignment made of the policy ...... that it was for the purpose of pledging whatever interest either or both of them had in the policy as security for the payment of the note ......"; and held that, as the assignment of the policy was not forbidden, and by its terms the privilege of surrendering it and receiving its cash value was not confined to the insured alone, the assignee was entitled to recover. In *Emery v. Manhattan Life Ins. Co.*, supra, decided four years later, the court expressly said that its conclusion did not conflict with the Mutual Life Insurance case, as the right to receive the cash surrender value was expressly restricted in that case to the insured.

In *Bank of Idana v. Illinois Life Ins. Co.* (Kans.), 9 P. (2d) 629 (1932), the policy, which had no unusual restrictive features, was assigned and delivered to a creditor as security for a debt of the insured. The bene-

ficiary joined in the assignment and the insurance company consented thereto. It was held that the creditor could maintain an action against the insurance company to recover the cash surrender and investment value of the policy, to be applied toward the satisfaction of the insured's indebtedness, that the assignment executed by the insured had all the potency of a power of attorney, and if the insurance company had any objection to the assignment of the policy, the time for it to speak was when the consent was requested.

In *McGimpsey v. Security B. & L. Assn.* (N. J.), 157 A. 441 (1931), a life insurance policy was given as additional security for a mortgage on land. After foreclosing, the mortgagee applied for and received the cash surrender value of the policy to make up the deficiency. The insured sued to recover from the mortgagee the amount received on the policy. The court, in holding that he was entitled only to the excess over the deficiency, stated: "The policy of insurance by reason of the form of its assignment was collateral security of similar tenor and effect to that usually taken as security for a negotiable instrument. The mortgagee was entitled, therefore, to the proceeds thereof......"

*First National Bank v. Getty, Exrx.*, 118 Pa. Superior Ct. 326, 179 A. 764, involved the assignment of a policy as collateral security. After the insured's death, the assignee and the insured's estate each claimed the proceeds. We there said (p. 331): "Regardless, however, as to who retains the technical legal title, a contract of pledge or a contract of assignment as collateral security gives to the pledgee or assignee the undoubted right to collect and realize upon the pledged or assigned chose in action."

By way of analogy, we may refer to section 70a of the Federal Bankruptcy Act, 11 U. S. C. A. §110 (a) which provides: "When any bankrupt shall have any insurance policy which has a cash surrender value payable

to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained......pay......to the trustee the sum so ascertained.....and continue to hold.....such policy free from the claims of the creditors......" The courts, in interpreting this section, have held that if a policy has a cash surrender value greater in amount than the indebtedness which it has been assigned to secure, it passes to the trustees. See *Burlingham v. Crouse*, 228 U. S. 459 (1913); *Mercer Nat. Bank v. White's Exr. et al.*, (Ky.) 32 S. W. (2d) 734 (1930); *McCahan's Est.*, 312 Pa. 515, 168 A. 685. These decisions tend to recognize and support the proposition that an assignee has an interest in the cash surrender value of a policy as well as in the proceeds thereof upon death.

We feel that under the pleadings this creditor-assignee of a policy which contains no express restriction respecting the payment of the cash surrender value should not be deprived summarily of the right to realize on his security. This will not result in any undue hardship on the insured, as he could have protected himself, if he had seen fit, after notice was given by his creditor of his intention to demand the surrender value of the policy, by obtaining a loan from the insurer and paying the debt.

In summarizing, our opinion is that the plaintiff should have been given an opportunity, in his endeavor to collect an indebtedness due, to establish his averments that the policy was validly assigned by both the insured and the beneficiary and possession thereof given to the assignee, and that notice was given to the attorney of the insured, who represented the insured and argued the case in this court, of his intention to surrender the policy. If he is able to support these allegations, he will be entitled to recover and retain the

sum due him and account to the insured for the balance.

We are of the opinion, therefore, that the lower court was in error in entering judgment on the pleadings.

Judgment is reversed, with a procedendo.