## Commonwealth *v.* Bardolph et al., Appellants.

Argued May 6, 1936.

Before KELLER, P. J., CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*W. Denning Stewart,* for appellant (No. 265).

*Charles B. Pritchard,* for appellant (No. 266).

*E. T. Adair,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., July 10, 1936:

The appellants were indicted charged with conspiracy to cheat and defraud the Franklin Savings and Trust Company (hereinafter called the bank). They were found guilty, and motions for arrest of judgment by Bardolph and by both defendants for a new trial were refused and sentences imposed. Separate appeals were taken, argued together, and will be disposed of in one opinion.

Before the jury was sworn, Bardolph filed a special plea in bar, averring that he had already been tried and lawfully acquitted at No. 400, April Sessions, 1932. The commonwealth joined issue, and a verdict was directed in its favor. Thereafter, both defendants pleaded not guilty to the general issue. Bardolph had been acquitted under an indictment charging embezzlement of the funds derived from the sale of the Hendel mortgage which is involved in this appeal. That was an entirely separate offense from the one considered in the second trial.

The test to be applied in considering the effective-

ness of the plea is not whether the evidence is the same in the two cases *(Com. v. Greevy,* 271 Pa. 95, 101, 114 A. 511), but whether Bardolph could have been convicted in the first trial of conspiracy: *Hilands v. Com.,* 114 Pa. 372, 6 A. 267; *Com. v. Hazlett,* 16 Pa. Superior Ct. 534, 547; *Com. v. Brown,* 28 Pa. Superior Ct. 296, 300; *Com. v. Forney,* 88 Pa. Superior Ct. 451, 465. An acquittal of forgery, for example, does not bar a prosecution for uttering the same forged instrument, nor does an acquittal of uttering a forged instrument preclude a subsequent prosecution for forging it, as they, are not the same offense: *Com. v. Leib,* 76 Pa. Superior Ct. 413. See, also, *Com. v. Flick,* 97 Pa. Superior Ct. 169. So, here, the conspiracy, the gravamen of which is the entering into an unlawful agreement, which need not be carried into effect, with a criminal intent to defraud, is an entirely distinct offense from embezzlement, with different constituent elements.

We think the court correctly disposed of the issues raised by the plea in bar.

Our summary of the evidence is necessarily confined to proof introduced by the commonwealth, as none was offered by the defense.

The bank failed on the 21st of September, 1931, and two months later A. S. Williams, an auditor of the Department of Banking of the Commonwealth of Pennsylvania, started a detailed examination of its affairs. He learned from the records that Herman Friedman, one of the appellants, a mortgage broker, had discounted numerous second and third mortgages at the bank, and when it closed he had unpaid loans amounting to $133,150.

The transaction particularly involved in these appeals had its inception on July 26, 1928, when J. M. Stoner, Jr., was president of the bank and Bardolph was treasurer. Louis Hendel, on that date, executed an $80,000 second mortgage, wherein the bank was

named mortgagee, which provided for payment of $2,000, monthly, for 11 months and the balance at the end of one year. Friedman, however, was admittedly the owner of the mortgage, but had pledged $60,000 of it to the bank as security for a $60,000 loan. Ten payments of $2,000 were made to Friedman, who turned them over to the bank, the last being made on May 28, 1929, leaving a balance of $40,000 due the bank, and $20,000 due Friedman for his unpledged interest. In the meantime, to wit, January 1, 1929, Bardolph succeeded Stoner as president. On June 19, 1929, Friedman executed another judgment note to the bank for $50,000, giving, as collateral, certain security which included his unpledged interest of $20,000 in the Hendel mortgage.

On August 14, 1929, when this mortgage was overdue and Friedman owed the bank $198,000, he entered into an oral agreement with the Pennsylvania Surety Company, which was interested in protecting itself on account of some guaranty it had given on Hendel's behalf and received from it the sum of $5,000 for an extension of the mortgage to September 3, 1929. On that date, Friedman agreed to give additional extension for a month in consideration of the payment of $5,750.

On October 3, 1929, Friedman entered into a written agreement with the surety company to sell it the mortgage in consideration of $56,000, payable as follows: $6,000 on or before October 10, 1929; $4,000 per month for 11 months, beginning with November, 1929; and $6,000 as a bonus on October 2, 1930.

On April 29, 1930, Bardolph, as president of the bank, wrote the surety company that the Hendel mortgage had been assigned to the bank by Friedman and that upon payment of $26,000 it would be assigned to the surety company, although the unpaid balance at that date, according to the bank's records, was $40,000.

The surety company gave checks from October 9, 1929, to October 6, 1930, in the aggregate of $58,350, in addition to the $10,750 already collected for the extensions. Each check simply bore the Friedman's endorsement. Williams stated that he traced all the checks as having been cashed or delivered to the bank, but he did not know whether Friedman "delivered them to the bank or delivered them to some officer or employee." However, Arlow, the assistant cashier, in charge of the general books and discounts, testified that all of Friedman's transactions were had with the president of the bank. Notwithstanding Friedman collected $58,350 from the surety company, the bank received only the interest due and $7,500 on account of the principal.

On November 18, 1930, Bardolph assigned the mortgage of record to the surety company, thus surrendering the collateral, on which there was still an unpaid balance, according to the mortgage register, of approximately $40,000.

Friedman, during this period, was credited in his individual account, in addition to $10,750 for the two extensions, with the sum of $17,141.25, and Bardolph in his individual account with $12,896.51. Williams was unable to trace on the records the remaining $19,-500 paid.

On July 20, 1931, when by the bank records there remained a balance of $30,000 due on the mortgage, Michael H. Parrish, Inc., of which Bardolph was president, with the approval of the bank directors, had a note, signed by Friedman as its treasurer, discounted in the sum of $29,624.31, with collateral in the form of an assignment of money owed it by the commonwealth. Out of the proceeds, $25,000 was applied to payment of the mortgage, and the remainder was credited to Bardolph's personal account and to the account of the Bardolph Investment Company. Nine days later Bardolph gave his personal check for the remaining

$5,000 due on the mortgage. None of the proceeds of the loan were ever credited to the Parrish company and at the time of the trial no part of the note had been paid.

The commonwealth contends that all the sums received from the surety company should have been applied to the Friedman notes, and that the conduct of the appellants points unerringly to an unlawful conspiracy to cheat and defraud the bank.

The appellants assert that the indictment was defective as the word "money" was omitted therein. Here, however, as in *Com. v. Bonnem*, 95 Pa. Superior Ct. 496, there was no motion to quash the indictment.

The Act of March 31, 1860, §128, P. L. 382 (18 PS §2451), provides: "If any two or more persons shall falsely and maliciously conspire and agree to cheat and defraud any person, or body corporate, of his or their moneys, goods, chattels, or other property, or do any other dishonest, malicious and unlawful act, to the prejudice of another, they shall be guilty of a misdemeanor." Section 11 of the Act of March 31, 1860, P. L. 427 (19 PS §261), provides that an indictment is sufficient if it plainly sets forth the nature of the offense charged, substantially in the language of the act. The bill was sufficiently definite and clear, as goods and chattels both include money. A detailed bill of particulars was furnished, giving facts upon which the commonwealth intended to rely, and included therein were statements that the defendants defrauded the bank of "sums of money." The defendants, therefore, had notice of just what they were required to meet. The indictment conformed with the mandates of the law.

The appellants insist, also, that the evidence, being all circumstantial, is insufficient to support the charge in the indictment. It is unnecessary to prove conspiracy by direct evidence, and it is not often that the

commonwealth can show an express agreement or the exact words which were used when the conspiracy was formed. The commonwealth here relied upon overt acts, supplemented by declarations of the conspirators and proof of benefits they received.

In *Com. v. Spillman et al.,* 74 Pa. Superior Ct. 192, the evidence relied on was the bank records. This court, speaking through President Judge KELLER, there said (p. 198) : "Nor was it necessary that the unity of purpose or design requisite to secure a conviction of conspiracy should be manifested by an equal sharing of the spoils among the conspirators or a use of the funds thus obtained in the same enterprise. If the actions of the conspirators showed a common design that one of their number should specifically profit as a result of their illegal operations, there was present sufficient unity of purpose or design to secure a conviction." See, also, *Com. v. Donnelly,* 40 Pa. Superior Ct. 116; *Com. v. Sanderson,* 40 Pa. Superior Ct. 416; *Com. v. Huston,* 46 Pa. Superior Ct. 172; *Com. v. Cotter,* 55 Pa. Superior Ct. 554; *Com. v. Wilcox,* 56 Pa. Superior Ct. 244.

Bardolph's improper conduct and his familiarity with the details of Friedman's transactions with the surety company are not disputed. He was clearly guilty of a breach of duty in not applying the payments made on the Hendel mortgage to reduce the Friedman loans, instead of making use of them in the manner we have outlined. This court, speaking through Judge STADTFELD, said in *First Natl. Bank to use v. Getty Exrx.,* 118 Pa. Superior Ct. 326, 331, 179 A. 764 : "Regardless, however, as to who retains the technical legal title, a contract of pledge or a contract of assignment as collateral security gives to the pledgee or assignee the undoubted right to collect and realize upon the pledged or assigned chose in action"; citing 49 C. J. 1019; *Muirhead v. Kirkpatrick,* 21 Pa. 237; *Hanna v.*

*Holton,* 78 Pa. 334, 337; *Farmers Natl. Bank v. Nelson,* 255 Pa. 455, 100 A. 136. The jury was evidently convinced that Friedman was associated with Bardolph in his fraudulent actions. It could reasonably be inferred that Bardolph learned through Friedman that $26,000, and not $40,000 as shown by the bank records, was owing on the Hendel mortgage, in addition to Friedman's interest of $20,000. It seems improbable that Friedman, burdened with a heavy indebtedness, after endorsing the checks and delivering them to the bank or to Bardolph, would have remained in ignorance of the disposition of their proceeds. If Friedman had not been acting in conjunction with Bardolph, he, with his wide business experience, would, no doubt, have followed the usual course of business and endorsed these checks to the order of the bank, or have drawn a check to its order and receipt on account of his indebtedness. The Parrish transaction throws further suspicion on the knowledge and improper conduct of Friedman. It is difficult to conceive that a company's treasurer, who found it necessary to borrow over $29,-000, would be so indifferent as to what became of the funds raised on the loan that he would not know that his company had received no credit whatever for the money borrowed.

The evidence offered was sufficient, in our judgment, to warrant the verdict of the jury.

That brings us to the question whether the books of the bank were properly admissible in evidence.

When the conspiracy was established, every thing that either appellant said, wrote, or did, in furtherance of their common purpose, during the continuance of the conspiracy, is deemed in law to have been said, written, or done by the other, and may be proved against each: 5 R. C. L., p. 1089, §39. Wigmore on Evidence, vol. 2, §1079, p. 590; *Com. v. O'Brien et al.,* 140 Pa. 555, 21 A. 385; *Wagner v. Aulenbach,* 170 Pa.

495, 32 A. 1087. Friedman is therefore charged with knowledge and approval of Bardolph's actions. When faced with testimony that the book entries were made by Bardolph, or with his authority, Friedman made no denial of knowledge and consent, nor did he offer any explanation.

Corporate books showing entries made in the regular course of business by a person employed for that purpose are recognized as admissible evidence, although the entrant under whose supervision the records were made is disqualified or unavailable as a witness, on the principle of necessity, and come within the exceptions to the Hearsay rule: *Com. v. Grotefend & Haun,* 85 Pa. Superior Ct. 7; Wigmore on Evidence, vol. 3, §1426, p. 159. The great increase in, and the complexity of, modern business has compelled, owing to practical inconvenience or unavailability of witnesses, a relaxation of the stringent rules of evidence respecting the introduction of book entries: *Com. v. Mealey,* 85 Pa. Superior Ct. 509, 514. As we said in *Lowenstein v. Greenbaum,* 65 Pa. Superior Ct. 19, 22: "The principles underlying rules of evidence are founded in the common experience of men. Their aim and object are to aid the administration of justice in the courts by the use of means long recognized as helpful in the ascertainment of the truth." It is not always required that the entrant be called to testify: Wigmore on Evidence, vol. 3, §1530, p. 276. It has been held sufficient if books are verified by one in control, although the entries were not made by him, if he knew them to be the books of regular entries: *Specktor et al. v. Victory Ins. Co.,* 282 Pa. 429, 128 A. 95; *Burke Electric Co. v. Penna. L. & P. Co.,* 61 Pa. Superior Ct. 374; *Pinkerton's Nat. Detect. Agency v. Rosedale Silk Co.,* 121 Pa. Superior Ct. 496, 503, 184 A. 282.

In this case, we have the books of a bank, which are not public to the same extent as public records. On

the other hand, while the bank was a private corporation, it was subject to public regulation. When it closed its doors, and was taken over by the banking department, the conduct of its officers became the subject of investigation by the commonwealth, and its books, under their control, became records in which the public had an interest: *People v. Hurst* (Mich.), 1 N. W. 1027.

*Com. v. Berney,* 28 Pa. Superior Ct. 61; *Miller v. Dilkes,* 251 Pa. 44, 95 A. 935, and *Paxos v. Jarka Corp.,* 314 Pa. 148, 171 A. 468, cited by the appellants, are not in conflict with this view. We recognized in the Berney case that book entries made in the ordinary course of business are admissible in evidence against third persons, if the books are properly proved.

This disposes of the objections to the admission in evidence of the records of the bank.

The appellants complain, also, of the failure of the court to affirm their tenth point, which, in substance, asked the judge to say to the jury that there was nothing irregular in the manner in which the Parrish note was handled, that, as the proceeds thereof were devoted to payment of the Hendel mortgage, no fraud was practiced on the bank. The way the funds raised by the Parrish note were distributed, as already stated, throws considerable light on the defendants' manipulation of the moneys that came under their control. This transaction was one of the overt acts which, as the commonwealth contends, showed a concealment of the funds derived from the sale of the Hendel mortgage.

Nor do we find that the court committed error in not adequately defining the charge of conspiracy. No specific exceptions were taken and further instructions were not requested. The charge, as a whole, was a fair and impartial presentation of the facts and the law applicable thereto.

We are convinced, after a careful consideration of

the record in this case and the able arguments of respective counsel, that none of the assignments of error are sustainable.

Judgment in each appeal is affirmed, and it is ordered that the defendants severally appear in the court below at such time as they may there be called and that they be by that court committed until they have complied with their sentence or any part of it which had not been performed at the time each appeal was made a supersedeas.